**MIDLAND FORGE, INC.,**
**Plaintiff,**

v.

**LETTS INDUSTRIES, INC., and Langenstein & Schemann AG.,**
**Defendants.**

**No. C 74–49.**

United States District Court,
N. D. Iowa,
Cedar Rapids Division.

March 27, 1975.

508

Stephen J. Holtman, Robert C. Tilden, F. James Bradley, Cedar Rapids, Iowa, for plaintiff.

Ross H. Sidney, Des Moines, Iowa, for Letts Industries, Inc.

Donald A. Wine, Eric F. Schwarz, Des Moines, Iowa, for Langenstein & Schemann AG.

ORDER

McMANUS, Chief Judge.

This matter is before the court on the resisted motion to dismiss filed January 8, 1975, by defendant Langenstein & Schemann AG.

Plaintiff Midland Forge, Inc. (Midland), an Iowa corporation with its principal place of business located in Cedar Rapids, Iowa, instituted this diversity action to recover damages under various theories of products liability. Defendants Letts Industries, Inc. (Letts) and Langenstein and Schemann AG. (Lasco) are foreign corporations with principal places of business outside of Iowa. The matter in controversy exceeds $10,000.00 and subject matter jurisdiction is present under 28 U.S.C. § 1332.

Service on both defendants was accomplished under Rules 4(d)(7) and 4(e), F.R.Civ.P., by utilizing the procedures of the Iowa "long-arm" statute, § 617.3, Code of Iowa (1973).[1] Defendant Lasco, a West German corporation not licensed to do business in Iowa, has moved the court to dismiss divisions II and III of the complaint for lack of personal jurisdiction, and division IV for failure to state a claim upon which relief can be granted.

*In Personam Jurisdiction*

Defendant Lasco contends that the court lacks jurisdiction over its person because its actions were not within the purview of § 617.3, Code of Iowa, and even if they could be so interpreted, these contacts with Iowa would not satisfy the minimum required by due process.

The first issue, whether a state long-arm statute applies to a given nonresident defendant, is a question of state law. Arrowsmith v. United Press Int'l, 320 F.2d 219 (2nd Cir. 1963); Jennings v. McCall Corp., 320 F.2d 64 (8th Cir. 1963); Schinker v. Rudd Mfg. Co., 386 F.Supp. 626 (N.D.Ia.1974). Plaintiff has the burden of establishing prima facie that the defendant is amenable to service under § 617.3. *Schinker, supra*; Edmundson v. Miley Trailer Co., 211 N.W.2d 269 (Iowa 1973). Once this prima facie showing has been made, the defendant must overcome or rebut that

[1]. Section 617.3, Code of Iowa (1973) provides in relevant part:

If a foreign corporation makes a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa, or if such foreign corporation commits a tort in whole or in part in Iowa against a resident of Iowa, such acts shall be deemed to be doing business in Iowa by such foreign corporation for the purpose of service of process or original notice on such foreign corporation under this section, and, if the corporation does not have a registered agent or agents in the state of Iowa, shall be deemed to constitute the appointment of the secretary of state of the state of Iowa to be its true and lawful attorney upon whom may be served all lawful process or original notice in actions or proceedings arising from or growing out of such contract or tort. . . . The making of the contract or the committing of the tort shall be deemed to be the agreement of such corporation . . . that any process or original notice so served shall be of the same legal force and effect as if served personally upon such defendant within the state of Iowa. The term "resident of Iowa" shall include any Iowa corporation, any foreign corporation holding a certificate of authority to transact business in Iowa, any individual residing in Iowa, and any partnership or association one or more of whose members is a resident of Iowa.

Service of such process or original notice shall be made (1) by filing duplicate copies of said process or original notice with said secretary of state, together with a fee of five dollars, and (2) by mailing to the defendant and to each of them if more than one, by registered or certified mail, a notification of said filing with the secretary of state, the same to be so mailed within ten days after such filing with the secretary of state. Such notification shall be mailed to each such foreign corporation at the address of its principal office in the state or country under the laws of which it is incorporated and to each such nonresident person at his address in the state of his residence. The defendant shall have sixty (60) days from the date of such filing with the secretary of state within which to appear. Proof of service shall be made by filing in court the duplicate copy of the process or original notice with the secretary of state's certificate of filing, and the affidavit of the plaintiff or his attorney of compliance herewith.

showing. *Edmundson, supra*; Tice v. Wilmington Chemical Corp., 259 Iowa 27, 47, 141 N.W.2d 616, 143 N.W.2d 86 (Supplemental Opinion) (1966).

■ In establishing the prima facie showing, plaintiff's well pleaded allegations are accepted as true. Lundell v. Massey-Ferguson Services N.V., 277 F.Supp. 940 (N.D.Ia.1967). A brief recitation of the pleaded facts and those appearing in supporting documents is necessary to consider plaintiff's various asserted bases for applying the long-arm statute.

Plaintiff contracted in August of 1972 with defendant Letts to purchase three electro-hydraulic drop forging hammers, the hammers to be manufactured by defendant Lasco. Plaintiff's purchase agreement was directly with, and signed by, Letts only.

Letts is not a subsidiary or commission agent of Lasco, but rather buys and resells products of Lasco and other firms. Letts maintains a stock of Lasco products at its Detroit, Michigan, facility, but it appears that the three drop forging hammers in the instant case were special ordered by Letts from Lasco to be delivered directly to Midland in Cedar Rapids.[2] Lasco is not licensed to do business in Iowa, and maintains no official representatives or salesmen in Iowa. This suit developed when the hammers repeatedly failed to perform as planned.

Plaintiff seeks to bring Lasco within the contract language of § 617.3, Iowa Code. That section requires a foreign corporation to "make a contract with a resident of Iowa to be performed in whole or in part in Iowa."

Plaintiff's difficulty lies primarily in establishing the existence of a contract between it and Lasco, since the latter was not a signatory party to the purchase agreement. Three arguments are advanced to support the existence of a contract, and the court is of the view that these arguments are well taken.

First, plaintiff contends that Lasco breached the implied warranties of merchantability and fitness for purpose which attended the sale of goods under the respective sections of the Uniform Commercial Code (U.C.C.) then in force in Iowa, §§ 554.2314 and 554.2315, Iowa Code (1971). It is argued that these implied warranties extended to plaintiff even though it did not purchase directly from, and therefore was not in privity with, Lasco. These warranties are then asserted as the contracts between Midland and Lasco to be performed in part in Iowa.

Under § 554.2318,[3] Iowa Code, the seller's warranties do extend to household members and guests of the buyer who are personally injured by any breach of the warranties. However, the comments to the Iowa Code provision and to § 2–318 of the U.C.C. indicate that this statutory language is not intended to restrict developing case law extending the warranties to others in the distributive chain who are not in privity with the seller. Comments, § 554.2318, Iowa Code Annotated (1967).

The abolishment of privity as a requirement to enforce implied warranties

2. The contract enumerates several modifications to be made in the standard specifications for the hammers, and an inspection report prepared by Lasco on February 22, 1973, indicates that these machines were manufactured to meet the particular requirements of the "customer," identified thereon as Midland Industries, Inc., a previous corporate name of plaintiff.

3. Section 554.2318, Code of Iowa (1971) reads:

*Third party beneficiaries of warranties express or implied.* A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section. Acts 1965 (61 G.A.) ch. 413, § 2318.

originated in the field of unwholesome foods and has evolved to include a vast range of products which prove defective and result in personal injuries. E. g., Tice v. Wilmington Chemical Corp., *supra*; State Farm Mutual Auto Ins. Co. v. Anderson-Weber, Inc., 252 Iowa 1289, 110 N.W.2d 449 (1961); Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69 (1960). In Iowa, the trend of judicial thinking has been to liberalize the responsibility of the seller and restrict the application of "caveat emptor." Peters v. Lyons, 168 N.W.2d 759 (Iowa 1969); Dailey v. Holiday Distributing Corp., 260 Iowa 859, 151 N.W.2d 477 (1967).

█ In the *Dailey* case, *supra,* the Iowa Supreme Court explicitly repudiated the privity requirement between a manufacturer and the ultimate purchaser in a commercial context. Plaintiffs in that case purchased dry cleaning equipment solely from a distributor-dealer, but the court found the manufacturer as well as the dealer accountable under the implied warranties. 260 Iowa 871–72, 151 N.W.2d 477. By the same reasoning in the instant case, any implied warranties accompanying the sale of the drop forging hammers by Lasco to Letts must extend to Midland.[4]

Plaintiff's second and third arguments for the existence of a contract relate to express warranties. Plaintiff contends that it relied upon certain written representations contained in advertising brochures published and circulated by Lasco, and these representations constituted an express warranty. Additionally plaintiff asserts that Letts, acting as an agent on behalf of Lasco, expressly warranted the machines for their intended use by a provision in the sales contract.

█ Express warranties can be made by distributing advertising literature which contains factual representations relied upon by the ultimate purchaser, even though the latter is not in privity with the manufacturer who made the statements. § 554.2313, Code of Iowa; Jacobson v. Benson Motors, Inc., 216 N.W.2d 396 (Iowa 1974); Hawkins Constr. Co. v. Matthews Co., Inc., 190 Neb. 546, 209 N.W.2d 643 (1973) (interpreting § 2–313 of the U.C.C.); Randy Knitwear, Inc. v. American Cyanamid Co., 11 N.Y.2d 52, 226 N.Y.S.2d 363, 181 N.E.2d 399 (1962) (commercial transaction). It is the court's view that plaintiff has alleged sufficient facts to establish an express warranty on the basis of the printed circulars for purposes of this motion.

█ Plaintiff's assertions regarding the agency relationship also establish a prima facie showing of an express warranty between Lasco and Midland. Paragraph six (6) of the sales contract with Letts states: *"Manufacturer* warrants that the product is suitable for the intended proposed use." (Emphasis added.)

█ The burden of proving that Letts acted as an agent for Lasco in making this warranty is on plaintiff. Jacobson v. Benson Motors, *supra*; Martin v. Jaekel, 188 N.W.2d 331 (Iowa 1973). But the question of principal-agent relationship and the extent thereof is one of fact to be proved in arguing the merits. Ioerger v. Schumaker, 203 N.W.2d 572 (Iowa 1973); Dailey v. Holiday Distributing Corp., *supra*. Unless conclusively rebutted, plaintiff's allegations are taken as true in ruling on this motion.

Defendant has not successfully rebutted plaintiff's assertions of fact

---

4. The Iowa Legislature has responded to the broadening interpretation placed on § 554.-2318 by the judiciary. That section has been amended, effective January 1, 1975, by Ch. 1249, § 16, Acts of the Sixty-Fifth General Assembly, 1974 Session, to read:

   *Third party beneficiaries of warranties express or implied.* A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section with respect to injury to the person of an individual to whom the warranty extends.

which prima facie establish implied and express warranties. The only substantial rebuttal of these factual assertions is that Letts was not a commission sales agent for Lasco, but this does not negate the allegation of a more limited agency which empowered Letts to execute a warranty on behalf of Lasco.

Having determined that a prima facie showing of implied and express warranties between Lasco and Midland has been made, it remains to decide whether these are "contracts to be performed in whole or in part in Iowa" under § 617.3, Code of Iowa. No case has been cited by the parties nor has the court located one which rules on this point.

However, the language of § 617.3 has been construed broadly in actions involving foreign corporations. Ceasar's World, Inc. v. Spencer Foods, Inc., 498 F.2d 1176 (8th Cir. 1974); Lundell v. Massey-Ferguson, supra; Tice v. Wilmington Chemical Corp., supra. The Iowa Supreme Court declared in Tice that "Code section 617.3 does nothing more than provide a plaintiff claiming some right of action in contract or in tort with an Iowa forum for enforcement of an existing substantive right." 259 Iowa at 41, 141 N.W.2d at 625.

Clearly plaintiff has alleged facts supporting a substantive right to recovery. The validity of these claims on their merits is irrelevant to whether a basis exists for exerting personal jurisdiction under the long-arm statute. Midwest Packaging Corp. v. Oerlikon Plastics, Ltd., 279 F.Supp. 816 (S.D.Ia.1968). It is only necessary in this case that plaintiff's claims arise out of rights secured by the substantive law of contract.

The law of products liability has developed eclectically, drawing upon various concepts from both tort and contract law, and perhaps culminating in the doctrine of strict liability in tort. See, e. g., Hawkeye-Security Insurance Co. v. Ford Motor Co., 174 N.W.2d 672 (Iowa 1970) (Hawkeye I); Greenman v. Yuba Power Products, Inc., 59 Cal. 2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963); Shapo, A Representational Theory of Consumer Protection: Doctrine, Function and Legal Liability for Product Disappointment, 60 Va.L.Rev. 1113 (1974); W. L. Prosser, Law of Torts, §§ 96–98 (4th ed. 1971). In cases of injury to persons or property other than the product in question, the strict liability theory may have subsumed recovery under implied warranty. Greenman, supra at 62, 27 Cal.Rptr. 697, 377 P.2d 897; Hawkeye I, supra at 684. Indeed at least one court has decided to abandon the older terminology and fashion substantive rules in this area under the heading "products liability." Cova v. Harley Davidson Motor Co., 26 Mich. App. 602, 182 N.W.2d 800 (1970).

But when the damages resulting from a product failure are economic losses, especially in the context of dealings between two corporations, the distinction between warranty liability in contract and strict liability in tort has retained vitality for many courts. Iowa Electric Light & Power Co. v. Allis-Chalmers Mfg. Co., 360 F.Supp. 25 (S.D.Ia.1973); Noel Transfer & Package Delivery Service, Inc. v. General Motors Corp., 341 F.Supp. 968 (D.Minn.1972); Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal. Rptr. 17, 403 P.2d 145 (1965). In Hawkeye-Security Insurance Co. v. Ford Motor Co., 199 N.W.2d 373, 381–82 (Iowa 1972) (Hawkeye II), the Iowa high court acknowledged that implied warranty under the U.C.C. and strict liability might both form independent theories for recovery in a proper situation, citing the Seely case.

■ In light of this court's views that economic losses may not be recovered under strict liability, as further discussed below, and the decision in Hawkeye II that such damages in a commercial setting are recoverable under warranty theories, plaintiff's warranty claims in the instant case must be characterized as seeking a contract remedy. Though these warranties are implied by law, with the exception of the express warranty made by Letts as an agent for Lasco,

they essentially constitute implied terms incorporated in a contract for the sale of goods, and hence any rights thereunder arise from a contract. *See* Rasmus v. A. O. Smith Corp., 158 F.Supp. 70, 78–79 (N.D.Ia.1958); Dailey v. Holiday Distributing Corp., *supra* 260 Iowa at 866, 151 N.W.2d 477. Thus the court concludes that the warranties between Lasco and Midland are "contracts to be performed in whole or in part in Iowa."

Plaintiff has also pled for recovery on tort theories of negligence and strict liability, attempting thereby to establish prima facie that defendant Lasco committed a tort in Iowa so as to subject it to service of process under § 617.3. Different and inconsistent legal theories for recovery may be plead together with respect to the set of operative facts giving rise to a cause of action, and jurisdiction over the defendant based on one theory allows the court to adjudicate the remaining theories. Tice v. Wilmington Chemical Corp., *supra* 259 Iowa at 43–44, 141 N.W.2d 616, 143 N.W.2d 86. *See* Rule 8, F.R. C.P. It is therefore unnecessary to decide whether plaintiff's allegations of a tort would establish a basis for jurisdiction over Lasco under § 617.3.

The court having determined that the long-arm statute is applicable by its terms, it is also necessary to decide whether its application in this case violates due process. *Ceasar's World, supra* at 1180; Munchak Corp. v. Riko Enterprises, 368 F.Supp. 1366, 1368 (M.D.N.C.1973). Satisfaction of due process requirements is governed by federal law. Aftanase v. Economy Baler Co., 343 F.2d 187, 192 (8th Cir. 1965); Lundell v. Massey-Ferguson, *supra* at 941–42.

Due process requires that the nonresident defendant have sufficient minimum contacts with the forum state to satisfy traditional notions of fair play, International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and that the defendant have invoked the protections of Iowa law by reason of its activities there. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In a contract action, the contract must have a "substantial connection" with the forum state. McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 233 (1957).

The Eighth Circuit Court of Appeals has enumerated five factors to be considered in evaluating compliance with the above principles:

(1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. (Citations omitted.) *Ceasar's World, supra* at 1180.

Analyzing the facts of the instant case in light of the above guidelines, the court concludes that the exercise of in personam jurisdiction over Lasco would not offend due process.

With respect to factors (1)–(3) above, the following facts appear from the filings. Lasco specifically manufactured three drop forging hammers with a total sale price of $213,662.00 for delivery to Midland in Iowa. When problems developed with the hammers at Midland's plant, several written communications were made between Midland and Lasco. The chief engineer and an officer of Lasco on different occasions traveled to Midland in attempting to alleviate the malfunctions in the machines. Lasco distributes its advertising brochures worldwide, and has sold electro-hydraulic hammers in thirty-seven countries.

Lasco purposefully manufactured and delivered to an Iowa resident three machines of considerable value, and derived substantial benefits therefrom. Defendant's promotional efforts allegedly influenced plaintiff, and may have generated future sales activity in Iowa. Plaintiff's cause of action is clearly related to these actions by Lasco. While the physi-

cal contacts with Iowa were not numerous, they indicate that Lasco had the minimum contacts, and that the warranty contracts accompanying the sale had a sufficient connection with Iowa, to satisfy due process. *See* Gardner Eng'r. Corp. v. Page Eng'r. Co., 484 F.2d 27 (8th Cir. 1973); Atlantic Tubing & Rubber Co. v. International Engraving Co., 364 F.Supp. 787 (D.R.I.1973); Midwest Packaging v. Oerlikon Plastics, *supra*; Wisconsin Metal and Chemical Corp. v. De Zurik Corp., 222 F.Supp. 119 (E.D.Wis.1963).[5]

■ Factors (4) and (5) above further support the exercise of personal jurisdiction in this case. Iowa has an interest in providing a local forum for the enforcement of warranties which attend products shipped into the state. And the convenience of the parties, though the least important of these factors, is better served by trying the action in Iowa. It is obviously advantageous to plaintiff. Defendant Lasco would presumably be amenable to process in Michigan in a suit by plaintiff or an indemnity action by Letts, and defending a lawsuit in Iowa should be no more inconvenient than doing so in Michigan. Having both defendants in the same action in Iowa will economize judicial time and effort as well as be more convenient to all the parties.

### Failure to State a Claim on which Relief Can Be Granted

Defendant urges dismissal of plaintiff's strict liability claim in division IV of the complaint on the grounds that the pleadings fail to allege the products were unreasonably dangerous and that strict liability does not provide relief for the injuries claimed herein. It is the court's opinion that defendant's motion must be granted.

Strict liability in tort for defective products cases was adopted by the Iowa Supreme Court in *Hawkeye I, supra* at 683–84. The court expressly accepted the principles set out in Restatement, Second, Torts, § 402A, which requires *inter alia* that a defective product be "unreasonably dangerous to the user or consumer or to his property." Plaintiff argues that the "unreasonably dangerous" requirement for strict liability is too closely akin to negligence concepts, and cites cases from other jurisdictions rejecting that requirement. Glass v. Ford Motor Co., 123 N.J.Super. 599, 304 A.2d 562 (1973); Cronin v. J. B. E. Olson Corp., 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153 (1972).

■ This court is bound to follow Iowa law in a diversity case, including conflict of law rules. Klaxon Co. v. Stentor Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Both parties apparently concede that Iowa tort law applies in this case, and the decisions to date give no indication that the "unreasonably dangerous" requirement will be abandoned in strict liability cases. *See* Foster v. Day & Zimmerman, Inc., 502 F.2d 867 (8th Cir. 1974); Kleve v. General Motors Corp., 210 N.W.2d 568 (Iowa 1973). Plaintiff's pleading lacks this essential allegation.

■ More significantly than this pleading defect, the court finds defendant's arguments persuasive that strict

---

5. The Wisconsin long-arm statute in force at that time, § 262.05(5) Wis.Stat., provided in relevant part that service could be made on a nonresident defendant in any action which:

    (c) Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to deliver or receive within this state . . . goods . . . or other things of value; or . . .

    (e) Relates to goods . . . or other things of value actually received by the plaintiff in this state from the defendant without regard to where delivery to carrier occurred.

The court found the exercise of jurisdiction over a foreign corporation in a breach of warranty action consistent with due process, though the sales contracts were made with a sales representative and not directly with the defendant manufacturer. 222 F.Supp. at 122–24.

liability does not grant any right to relief in this case. Plaintiff seeks to recover the value of the machines, plus installation expenses, repair costs, and additional damages exceeding $200,000 for loss of business profits and goodwill.

As plaintiff correctly notes, there is disagreement among jurisdictions as to what type of injuries create a right to recovery in strict liability. Traditionally, damages are recoverable in tort for personal injuries or damages to property other than the defective product itself. Divergent views are held as to whether destruction of the product itself and consequential commercial losses give rise to recoverable damages in strict liability. *See* Franklin, When Worlds Collide: Liability Theories and Disclaimers in Defective Products Cases, 18 Stan. L.Rev. 974, 996–1004, 1012–16 (1966); Comment, 56 Iowa L.Rev. 707 (1971). *Compare* Santor v. A. & M. Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305 (1965), *with* Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965).

The point has not been directly decided in Iowa. But in *Hawkeye II, supra* at 381–82, the court held that warranty theories were not superseded by strict liability in an action between two corporations involving a commercial transaction. The majority opinion in *Seely* and language in Farr v. Armstrong Rubber Co., 288 Minn. 83, 179 N.W.2d (1970), both of which indicated that warranty law governed commercial transactions, were cited approvingly in the Iowa decision. 199 N.W.2d at 382.

In a case involving a defective transformer, the Southern District has interpreted the Iowa law of strict liability as not encompassing benefit of bargain losses where a product purchased between corporations failed to function properly in its commercial setting. Iowa Electric Light & Power Co. v. Allis-Chalmers Mfg. Co., 360 F.Supp. 25 (S.D.Ia. 1973). This court is of the view that the law of strict liability in Iowa would not create any remedy for economic losses in the instant case of an industrial machine malfunctioning in its commercial use, especially where neither party appears to have been in an unequal bargaining position. *See* Iowa Electric, *supra*; Noel Transfer & Package Delivery Service, Inc. v. General Motors Corp., 341 F.Supp. 968 (D.Minn.1972); Eli Lilly & Co. v. Casey, 472 S.W.2d 598 (Tex.Civ.App.1971); *Seely, supra*; Prosser, Torts, *supra* at § 101.

Thus plaintiff cannot recover any benefit of bargain losses, including the value of the machines and repair costs as well as lost profits. Having no right to relief, plaintiff's claim must be dismissed.

It is therefore

Ordered

1. Division IV of plaintiff's complaint is dismissed.

2. Remainder of motion is denied.