463 A.2d 1085

**INDUSTRIAL UNIFORM RENTAL COMPANY, INC. and Stork Diaper Service, Inc., Appellants,**

v.

**INTERNATIONAL HARVESTER CO.**

Superior Court of Pennsylvania.

Argued June 3, 1982.

Filed July 15, 1983.

Arnold M. Kessler, Philadelphia, for appellants.

Francis F. Quinn, Philadelphia, for appellee.

Before HESTER, CIRILLO and JOHNSON, JJ.

JOHNSON, Judge:

The question before this court is whether Pennsylvania courts should recognize a claim in strict liability [1] for recov-

---

1. Restatement (Second) of Torts § 402A (1965).

ery of economic losses,[2] where the injury is only in the deterioration of the product itself, and is not the result of a defect causing some untoward occurrence thereby damaging the product.

In September 1971 Avis Rent A Car System, Inc. purchased a certain number of trucks from International Harvester Co. In October 1971 the appellant corporations, Industrial Uniform Rental Co., Inc. and Stork Diaper Service, Inc., leased the trucks from Avis for use in their business. Then in October 1974 the appellant corporations purchased these same trucks from Avis.

In December 1972 two of these trucks had allegedly developed cracks and failures in the frames, which were repaired by Avis. Then, after the 1974 purchase of the trucks, twelve more trucks allegedly developed cracks and failures in the frames. These cracks were repaired by the appellant corporations.

In June of 1978 the appellant corporations commenced this suit in trespass against International Harvester, the manufacturer of the trucks, alleging negligent design, manufacture and sale of the trucks, and requesting damages for the cost of the repairs to the trucks. In its answer, under New Matter, International Harvester raised the bar of the statute of limitations, which the appellants denied in their reply, alleging that this being a "property damage" claim it was within the statute of limitation for trespass actions.

A certain amount of discovery was undertaken until March 1981 when International Harvester filed a motion for summary judgment, arguing that the appellants' claim was solely for economic losses, that the allegations in the com-

2. An action to recover for "economic" harm has been defined as "an action brought to recover damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Note, Economic Loss in Products Liability Jurisprudence,* 66 Colum.L.Rev. 917, 918 (1966). *See also* Appel, *Strict Liability: Recovery of "Economic" Loss,* 13 Idaho L.Rev. 29, 40 (1976) (stating that damages to the product itself is often referred to as direct economic loss, measured by the loss on the bargain, cost of replacement, or cost of repair).

plaint that the trucks were defective, poorly designed and not adequate for their contemplated use, sounded in breach of warranty, and that therefore the action was barred by section 2–275 of the Uniform Commercial Code (UCC).[3]

In answer to the motion for summary judgment, the appellants argued *inter alia* that their claim for damages included not only repairs to the trucks but also a "diminution in use expectancy," and that their claim was indeed a tort action. In their memorandum of law in support of their answer the appellants raised for the first time the question of section 402A of the Restatement (Second) of Torts, asserting that Pennsylvania law supported their action "under 402A and in negligence against the manufacturer of trucks where defects cause damages sustained."

The trial court in its opinion stated that the uncontradicted evidence established that the plaintiffs were seeking damages for defects of quality evidenced by internal deterioration or breakdown which constituted economic loss not recoverable in a claim under strict liability, and granted the motion for summary judgment.

On appeal to this court the appellant purchasers of the trucks assert that the (unspecified) defects in the trucks brought about the cracking and caused damages to the trucks, thus creating a cause of action for "property damage" under section 402A of the Restatement (Second) of Torts.

We believe, on the contrary, that the claim in this case is precisely the type of claim envisaged by the UCC. *See* 13 Pa.C.S.A. § 2714, which provides:

### § 2714. Damages of buyer for breach in regard to accepted goods

**3.** The Pennsylvania Uniform Commercial Code, Act of April 6, 1953, P.L. 3, No. 1, § 1–101 *et seq., as re-enacted, amended and revised,* 12A P.S. § 1–101 *et seq.,* was repealed by the Act of November 1, 1979, P.L. 255, No. 86, § 8. It was enacted and transferred to Title 13 of the Pennsylvania Consolidated Statutes without change in substance by the same act. *See* Act of November 1, 1979, P.L. 255, No. 86, § 7. 13 Pa.C.S.A. §§ 1101–9507 (Purdon Pamp.1982).

(a) Damages for nonconformity of tender.—Where the buyer has accepted goods and given notification (section 2607(c)) he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the breach of the seller as determined in any manner which is reasonable.

(b) Measure of damages for breach of warranty.—The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have if they had been as warranted, unless special circumstances show proximate damages of a different amount.

(c) Incidental and consequential damages.—In a proper case any incidental and consequential damages under section 2715 (relating to incidental and consequential damages of buyer) may also be recovered.

We do not agree with appellants that the facts of this case call for the application of Section 402A of the Restatement (Second) of Torts,[4] which provides:

§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

4. Section 402A was adopted by the Supreme Court of Pennsylvania in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966).

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

There are two lines of cases on the issue presented by this appeal. There is the majority view, led by the landmark decision of the Supreme Court of California in *Seely v. White Motor Co.*, 63 Cal.2d 9, 403 P.2d 145, 45 Cal.Rptr. 17 (1965). There is also the minority view, led by the equally significant decision of the Supreme Court of New Jersey in *Santor v. A. & M. Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965).

In *Santor* the plaintiff sued the manufacturer of carpeting for defects which caused lines to appear in the carpeting. The New Jersey supreme court held first that the plaintiff could sue the manufacturer for breach of implied warranty, that privity of contract was not necessary, and that the action could be maintained even though the damage was limited to loss of value of the carpeting. The New Jersey court then went on to rule that the responsibility of the maker should be no different whether the damage was personal injury, damage to other property or to the product involved, and that strict liability in tort was applicable to actions for economic losses resulting from defective products.

In *Seely* the plaintiff purchased a truck for heavy-duty hauling. From the beginning the purchasers experienced a "galloping" problem with the truck, which they attempted to repair. Then one day the brakes failed, and the truck overturned, causing no personal injuries but resulting in over five thousand dollars' worth of damage to the truck. The California supreme court, disagreeing with the New Jersey court, ruled that as the UCC system of recovery was not superseded by the doctrine of strict liability which applied to actions for personal injury and property damage only, and not to actions for economic loss alone, there could be no recovery for the injury to the truck under strict liability. As part of its reasoning the California court considered the purpose for the two distinct remedies:

The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the "luck" of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone. . . . The Restatement of Torts similarly limits strict liability to physical harm to person or property.

*Seely v. White Motor Co.,* 63 Cal.2d at 18, 403 P.2d at 151, 45 Cal.Rptr. at 23 (citations omitted).

The doctrine of products liability was developed primarily as a means by which consumers could be compensated for personal injury and property damage caused by defective products. *See Note, Products Liability in Commercial Transactions,* 60 Minn.L.Rev. 1061 (1976). *See generally, Note, Economic Loss in Products Liability Jurisprudence,* 66 Colum.L.Rev. 917 (1966). The warranty theory, however, now governed by the Uniform Commercial Code, provides for liability for losses on bargains and other injuries resulting from failure of the product to meet the expectations of the buyer where the seller has breached express or implied warranties to the buyer. *See* Ribstein,

*Guidelines for Deciding Product Economic Loss Cases,* 29 Mercer L.Rev. 493 (1978).[5]

It would seem that the *Seely* and *Santor* lines of cases differ in that the *Seely* line focuses on the *type of harm* caused by the defective product, whereas the *Santor* line seems to view a defective product as essentially an unmerchantable product under the UCC, *see* 13 Pa.C.S.A. § 2314(b). *See Note, Products Liability in Commercial Transactions,* 60 Minn.L.Rev. 1061, 1068–69 (1976).

We believe in the validity of the "type of harm" approach, particularly on the facts of the case before us which involve a commercial buyer of trucks for use in its business claiming its expenses because the trucks it leased and later purchased were allegedly defective. An analysis of the case law in Pennsylvania and elsewhere supports this view.

In *Lobianco v. Property Protection, Inc.,* 292 Pa.Super. 346, 437 A.2d 417 (1981), this court held that a homeowner who had purchased a burglar alarm system which malfunctioned could not bring a strict liability action against the seller of the system for the loss she incurred in the theft of her jewelry.[6] This case is helpful to the extent that it seems to indicate a reluctance in this court to allow strict liability recovery for purely economic loss. *See also R.B. Equipment Co. v. Williams, Shields, Snyder & Goas,* 304 Pa.Super. 31, 450 A.2d 85 (1982). In *R.B. Equipment* the

5. Professor Ribstein argues that in fact, there is no clear distinction between cases involving repair loss due to gradual deterioration because of a defect, or property damage to the product where a defect brought about the calamity, causing the injury. He therefore proposes a formula for deciding economic loss cases, where the primary basis of liability for property damage or economic loss, would be representational (i.e. manufacturers would be held to their representations), supplemented by a negligence duty (i.e. requiring the manufacturer to act reasonably and to not intentionally disregard risks) so as to retain the deterrence objective of product liability. 29 Mercer L.Rev. at 511.

6. The rationale for this decision was joined by two judges, with two judges concurring in the result, and two judges dissenting on the grounds that the seller's limitation of liability clause was unconscionable.

superior court quashed as interlocutory an appeal from the trial court's order sustaining the defendants' preliminary objections to the strict liability counts of a complaint against manufacturers and suppliers of allegedly defective cement and concrete used in constructing roads, sidewalks, curbing and stairs in a public school project. Wickersham, J. dissenting, would have affirmed the trial court. Part of the rationale of the dissenting opinion was that the plaintiff was not the school authority—the user of the product, but an assignee of the general contractor. More importantly for our purposes, though, Judge Wickersham quoted with approval from the rationale in *Posttape Associates v. Eastman Kodak Co.*, 537 F.2d 751 (3d Cir.1976), *q.v.* page —— *infra.*

A recent case applying Pennsylvania law is *Pennsylvania Glass Sand Corporation v. Caterpillar Tractor Co.*, 652 F.2d 1165 (3d Cir.1981). Pennsylvania Glass Sand Corporation [PGS] brought a diversity action against Caterpillar Tractor, the manufacturer, to recover damages it incurred as a result of a fire in a front-end loader purchased from Caterpillar. The fire broke out, four years after the purchase, in the front of the loader near the hydraulic lines. The fire spread, severely damaging the loader, although no personal injuries resulted. The basis of PGS' complaint in negligence and strict liability (§ 402A) was the absence of a fire suppression or extinction system. (In a footnote the court explained that the four-year UCC statute of limitations had possibly barred the claim.) The court, predicting how the Supreme Court of Pennsylvania would address the question of whether accidental injury to the defective product itself should be regarded as an economic loss recoverable only in a contract warranty action, expressed the belief that the Pennsylvania supreme court would draw a distinction between the type of injury to a defective product that constitutes mere economic loss, and the type of injury that amounts to the sort of physical harm traditionally compensable in tort. 652 F.2d at 1173.

The *PGS* court discussed its earlier decision in *Posttape Associates v. Eastman Kodak Co.*, 537 F.2d 751 (3d Cir. 1976). In *Posttape* a film maker sought to recover increased costs and lost profits resulting from defective film supplied by Kodak. The *Posttape* court decided that section 402A was of doubtful utility in a commercial setting when the damages were consequential and arose from a non-dangerous impairment of quality of the product, and that the provisions of the UCC were better tailored to such a situation.

The *PGS* court noted that "implicit in [the *Posttape*] opinion is a recognition of the difference between claims for economic loss and for physical damage to the defective product." 652 F.2d at 1174. "In addition, the [*Posttape*] opinion alluded to the policy distinctions that make the U.C.C. the proper vehicle for redressing losses occasioned by impairment of quality, and make § 402A the superior device for rectifying the consequences of dangerously defective products. [*Posttape*, 537 F.2d] at 755." *PGS*, 652 F.2d at 1174.

Finally, reviewing the circumstances of the damage alleged by PGS, the court decided that, as the nature of the defect and the type of risk it poses are the guiding factors, and that as the damage was the result of a fire, and that the defect constituted a safety hazard, the complaint brought by PGS appeared to fall within the policy of tort law that the manufacturer should bear the risk of hazardous products. *Id.* at 1174–75. Furthermore, said the court, the complaint did not appear to implicate the policies of warranty law, because there were no allegations that the loader was of poor quality or otherwise unfit to perform its job. *Id.* at 1175. The court concluded that Pennsylvania courts would regard the injury stemming from the allegedly hazardous defect in the loader as the sort of physical injury compensable under tort law. It was the hazardous condition that removed the situation from the embrace of the UCC.

The United States Court of Appeals for the Third Circuit, predicting, in another case, how the Supreme Court of Illinois [7] would decide the question whether economic losses are recoverable under tort theories of liability, ruled that the purchaser of a roof could not recover under strict liability or negligence for failure of the roof to perform.[8] As the court explained:

The rationale behind strict liability in personal injury situations is not well-suited to claims alleging only economic loss. Economic loss results from the failure of the product to perform to the level expected by the buyer and the seller. Such loss is most frequently measured by the cost of repairing the infirmity or by the difference in the value of the product as it exists and the value it would have had if it performed as expected. Thus, economic loss is almost always incurred by the owner of the product, not by persons who merely use it or come into contact with it. The original purchaser, particularly a large company such as Jones & Laughlin, can protect itself against the risk of unsatisfactory performance by bargaining for a warranty. Alternately, it may choose to forego warranty protection in favor of a lower purchase price for the product. Subsequent purchasers may do likewise in bargaining over the price of the product. In any event, because persons other than the owner of the product will not incur economic losses resulting from the product's poor performance, the costs associated with economic loss will likely be reflected in the price of the product. There accordingly would seem to be no need to internalize these costs through a non-price mechanism such as strict liability.

7. The Court of Appeals explained that the district court had concluded that a Pennsylvania state court would look to Illinois law under its "interest analysis/significant contacts" choice of law test. *See* 626 F.2d at 284.

8. The roof was built to cover a 1.3 million square foot steel finishing plant in a region subject to high speed winds and extreme fluctuation in temperature. Shortly after its completion the roof blistered, wrinkled, and cracked; later, parts of it blew off. As a result, water entered the plant causing serious damage.

*Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.*, 626 F.2d 280, 288–89 (3d Cir.1980) (footnote omitted).

The court further explained:

Finally, the extension of strict liability proposed here by Jones & Laughlin would appear to conflict with the decision by the Illinois Legislature to enact the sale provisions of the Uniform Commercial Code (UCC).... Section 2–313 of the Code recognizes the existence of express warranties, and § 2–314 enacts an implied warranty of merchantability and fitness. Section 2–314 provides that "[u]nless excluded or modified ..., a warranty that the goods shall be merchantable is implied in a contract for their sale .... To be merchantable, the goods, inter alia, must be "fit for the ordinary purposes for which such goods are used." ... The Code also provides, however, that the parties to a sales contract may agree that the buyer possesses no warranty protection at all, or may limit any warranties in any reasonable manner. *Id.* § 2–316. The parties may even agree to exclude the implied warranty of merchantability and fitness if they do so in writing, and may modify the implied warranty by clear and conspicuous language. *Id.* § 2–316(2).

The extension of strict liability to cover economic losses in effect would make a manufacturer the guarantor that all of its products would continue to perform satisfactorily throughout their reasonably productive life. Inasmuch as the doctrine of strict liability does not permit a manufacturer to limit its liability through the use of a waiver or a limited warranty, importation of strict liability into the economic loss area would effectively supersede § 2–316 of the UCC. Yet, there is nothing in prior opinions of the Illinois Supreme Court to suggest that it would undertake such an encroachment on the legislative prerogative. As the Supreme Court of Idaho remarked recently in dealing with this very question:

[T]he legislatures of nearly every state in the Union, have adopted the UCC which carefully and painstaking-

ly sets forth the rights between the parties in a sales transaction with regard to economic loss. This Court, in the common law evolution of the tort law of this state, must recognize the legislature's action in this area of commercial law and should accommodate when possible the evolution of tort law with the principles laid down in UCC. [*Clark v. International Harvester Co.*, 99 Idaho 326, 335, 581 P.2d 784, 793 (1978)]. Consequently, we do not believe that the Illinois Supreme Court would extend its common law of tort liability in the manner suggested by Jones & Laughlin.

For the foregoing reasons, we predict that the Illinois Supreme Court would hold that economic losses are not recoverable under claims based on principles of tort law. *Id.* at 289 (footnote omitted).

This rationale, which appears to coalesce with the view of most jurisdictions on this issue, seems to this court to be the correct one, and the one which Pennsylvania courts should adopt.

We find further support in recent cases in other jurisdictions following the majority view.

The Supreme Court of Nebraska has held that the purchaser of a defective product cannot recover economic losses under negligence or strict liability absent physical harm to persons or property caused by the defective product. In *National Crane Corp. v. Ohio Steel Tube Co.*, 213 Neb. 782, 332 N.W.2d 39 (1983), the plaintiff was a manufacturer of cranes which sought to recover for the costs and expenses of removing defective steel tubing used in the tilt cylinder mechanism of its cranes. The Nebraska supreme court concluded that the damages involved were those resulting from the purchase of unsatisfactory products and that the cause of action for such loss should be pursued under a warranty or contract theory.

The Supreme Court of Illinois, approving the Third Circuit's rationale in *Pennsylvania Glass Sand, supra,* held that "where only the defective product is damaged, econom-

ic losses caused by qualitative defects falling under the ambit of a purchaser's disappointed expectations cannot be recovered under a strict liability theory." *Moorman Manufacturing Co. v. National Tank Co.,* 91 Ill.2d 69, 85, 61 Ill.Dec. 746, 753, 435 N.E.2d 443, 450 (1982).[9]

In *Northern Power & Engineering Corp. v. Caterpillar Tractor Co.,* 623 P.2d 324 (1981), in an action by a buyer against the manufacturer of a generator whose engine failed causing severe damage to the machine, the Supreme Court of Alaska held that the buyer's loss was entirely economic and thus could not be recovered under strict liability in tort.

In *Northern Power* the buyer argued further that the oil pressure shutoff mechanism, being defective and having damaged the engine, was a defective product resulting in damage to the plaintiff's property, the generator (i.e. causing "property damage"). This is the same argument presented to this court by the appellant corporations now before us. The Alaska court responded to the argument thus:

> While we think this proposition may have some validity where the components are sold separately or are provided by different suppliers, we find no justification or support for such a rule where both components are provided by one supplier as part of a complete and integrated package. Since all but the very simplest of machines have component parts, such a broad holding would require a finding of "property damage" in virtually every case where a product damages itself. Such a holding would eliminate the distinction between warranty and strict products liability.

*Northern Power & Engineering Corp. v. Caterpillar Tractor,* 623 P.2d at 330 (footnote omitted). The Alaska supreme court ruled that when a defective product creates a

---

**9.** In *Moorman* a food processor filed a complaint in, *inter alia,* strict liability and negligence for the economic losses resulting from an alleged crack in a grain storage tank. The Illinois Supreme Court concluded that this was a commercial loss of the type protected by the law of warranty.

situation potentially hazardous to persons or other property, and loss occurs as a result of that danger, strict liability in tort is an appropriate theory of recovery even though the damage is confined to the product itself. 623 P.2d at 329.[10] But because in the generator case there was no evidence that the defective shut down system presented any danger to persons or other property, but simply caused the engine to seize up and stop operating, this was economic loss only.

We borrow from this rationale and dispose likewise of appellants' property damage argument. We shall not classify allegedly defective manufacture leading to deterioration of the product as property damage in the section 402A sense.

The Supreme Court of Minnesota has similarly preferred the *Seely* rationale and held that economic losses arising out of commercial transactions, excepting those involving personal injury or damage to other property, are not recoverable under tort theories of negligence or strict liability. *Superwood Corp. v. Siempelkamp Corp.*, Minn., 311 N.W.2d 159 (1981) (where the buyer of a hot plate press of which the cylinder failed brought an action for damage to the press and for lost profits).

In *Nobility Homes of Texas, Inc. v. Shivers*, Tex., 557 S.W.2d 77 (1977), the Supreme Court of Texas held that the buyer of a defective mobile home could bring an action against the manufacturer, to recover economic loss, in negligence and in warranty, but not in strict liability because the product was not unreasonably dangerous and did not cause physical harm to the buyer or to his property.

■ Extrapolating from the above-mentioned authority we formulate the following rule: In an action between commercial enterprises, where defective design, manufacture and sale of a product is alleged, where there is nothing in the record to indicate that the defect is a condition

10. The Alaska court also ruled that in order to recover on such a theory plaintiff must show (1) that the loss was a proximate result of the dangerous defect, and (2) that the loss occurred under the kind of circumstances that made the product a basis for strict liability. *Id.*

potentially dangerous to persons or to property, and where the purported defect results in progressive deterioration of the product itself, the buyer's cause of action for its economic losses against the seller is in breach of warranty under the UCC.

■ Furthermore, the complaint in the instant case, captioned in trespass and alleging "negligence and carelessness ... in designing, manufacturing, and selling the trucks," nevertheless (1) is totally insufficient to state a cause of action in strict liability, which claim was only asserted at the time of the motion for summary judgment and (2) by its very language that the trucks were "not adequate for their contemplated use" clearly states a possible cause of action in breach of warranty,[11] and is therefore barred because it was brought more than four years after tender of delivery of the trucks. 13 Pa.C.S.A. § 2725.

The order of the trial court granting summary judgment is affirmed.

HESTER, J., files a dissenting opinion.

HESTER, Judge, dissenting:

I dissent. The issue for review is whether a cause of action arising from a defective product causing damage only to the product itself is properly grounded in tort under § 402A of the Restatement of Torts (2d). Although this issue has not been finally adjudicated by our appellate courts, the United States Court of Appeals for the Third Circuit, in *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165 (3d Cir.1981), decided this precise issue according to its informed and cautious belief of how the Pennsylvania Supreme Court would rule. I will consider *Pennsylvania Glass Sand*, supra, and both forum and non-forum decisions in reviewing this issue of near first impression.

Section 402A of the Restatement of Torts (2d) was adopted by the Pennsylvania Supreme Court in *Webb v.*

11. *See, e.g.,* 13 Pa.C.S.A. §§ 2313, 2314, 2315.

*Zern,* 422 Pa. 424, 220 A.2d. 853 (1966). Liability under § 402A is restricted as follows: 1) the defendant must be engaged in the business of selling the product alleged to be defective; 2) the defective condition must render the product unreasonably dangerous; 3) the product must be unreasonably dangerous to the consumer or *his property;* 4) the product must cause physical harm to the ultimate user or consumer, or *his property;* and, 5) "the product is expected and does reach the user or consumer without substantial change in the condition in which it was sold."[1]

It is not in dispute that the damage here was to the defective products themselves, namely, the delivery trucks. Appellants aver that physical damage to the defective product lies within the purview of § 402A; conversely, appellee maintains that such damage is solely an economic loss for which retribution is traditionally sought in commercial law.

Ascertaining the correct theories of liability for physical injury to the consumer's or ultimate user's person, or to the non-defective property of the consumer or user is not an abstruse assignment. Section 402A has been upheld frequently and consistently as the mode of recourse for these injuries. See *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975); *Speyer, Inc. v. Humble Oil & Refining Co.,* 275 F.Supp. 861 (W.D.Pa.1967), affirmed 403 F.2d 766 (3d Cir.1968), certiorari denied 394 U.S. 1015, 89 S.Ct. 1634, 23 L.Ed.2d 41 (1969). Ambiguity abounds, how-

---

**1.** Special Liability of Sellers of Products for Physical Harm to User or Consumer.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property, is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

ever, where the effects of the defect reach no further than the defective product itself.

Damage incurred by the defective product *only* is often considered solely economic loss where the plaintiff suffers out of pocket expenses, loss of bargain, or cost of replacement or repair. *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). Some courts presume economic loss simply because the defective product alone is damaged; the nature of the defect and the manner in which damage was inflicted is immaterial. For example, in *Mid Continent Aircraft Corp. v. Curry County Spraying Service, Inc.,* 572 S.W.2d 308 (Tex., 1978), an aircraft was forced to an emergency crash landing because the defendant/manufacturer failed to install a crankshaft gear bolt lock plate. The aircraft received extensive damage upon landing. The *Mid Continent* court categorically labelled damages to the defective product itself as economic losses governed solely by the Uniform Commercial Code. All damages to the defective product itself, regardless of degree or manner inflicted, were deemed losses to the purchaser of the benefit of the bargain with the seller—a classic measure of contract damages.

This general rule projected by *Seely,* supra, and *Mid Continent,* supra, has been qualified in diverse fashion. The applicability of § 402A and warranty law has been considered by some courts to weigh heavily upon the nature of the defect and the manner in which the damage developed. For example, in *Pennsylvania Glass Sand Corp. (PGS) v. Caterpillar Tractor Co.,* supra, the court distinguished both theories on that basis. PGS filed its diversity action in negligence and strict liability under § 402A; it did not allege breach of warranty. The cause of action arose from a defective design in a front-end loader that PGS purchased from the defendant/manufacturer. Following four years of operation by PGS, the front portion of the loader caught fire. Due to the defendant's omission of a fire extinguishing system from the design, the fire spread undeterred. PGS expended $170,000 in repairs, rental of a

temporary replacement and installation of fire suppressant equipment. Similarly, the defendant's motion for summary judgment was granted by the trial court on grounds that PGS had suffered a purely economic loss not recoverable in tort.

Although impressed by the premise espoused by our Supreme Court in *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968), i.e., that § 402A and implied warranty are nearly coextensive in application, the *Pennsylvania Glass Sand* court opined that the theories were not equally applicable in all product-oriented disputes. It held that warranty causes of action are more suitable for redress from qualitative defects, whereas § 402A is more appropriately addressed to hazardous defects causing calamitous damage. In other words, according to *Pennsylvania Glass Sand*, supra, damage to the defective product itself resulting gradually from internal deterioration or breakdown is economic loss; § 402A physical injury to the defective product must arise as the result of violent accidents.

The defect in *Pennsylvania Glass Sand*, supra, was the failure to design a loader equipped with a fire extinguishing system. As a result, the risk of conflagration was particularly acute and the operation of the loader especially hazardous. The *Pennsylvania Glass Sand* court concluded, therefore, that the cause of action was properly brought in tort under § 402A.

I acknowledge that *Pennsylvania Glass Sand*, supra, does not apply here. The inspections of the twelve damaged trucks disclosed broken welds for front spring brackets, fractured frame rails, broken spring cross-members, fractured mounting plates for gasoline tank support straps, broken shock absorber mounts and twisted support posts. These damages were detected by appellants two or three years following execution of the lease agreement and initial operation of the trucks; therefore, it cannot be gainsaid

that damages here were incurred more gradually than abruptly.[2]

Certain jurisdictions have expanded the exception to the pure economic loss theory beyond the sudden, calamitous infliction of harm to the defective product itself. Where the defect causes the defective product alone to incur damages in a gradual manner, yet the deterioration is not commensurate with ordinary and expected wear and tear to the product, the common law tort theory of negligence is a permissible recourse. *Spence v. Three Rivers Builders and Masonry Supply, Inc.*, 353 Mich. 120, 90 N.W.2d 873 (1958); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322 (Del.Super., 1973).

The "consumer expectation" test adopted by *Spence*, supra, and *Oliver B. Cannon & Sons, Inc.*, supra, was applied to a strict liability cause of action by the 5th Circuit Court of Appeals in *Two Rivers Co. v. Curtiss Breeding Service*, 624 F.2d 1242 (5th Cir.1980), rehearing denied 629 F.2d 1350 (5th Cir.1980), certiorari denied, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 348 (1981). The plaintiff purchased bull semen processed by the defendant for the purpose of artificially inseminating its cows. Impregnation resulted; however, a genetic abnormality, syndactylism, developed in some offspring. The plaintiff attributed the birth defects to the semen; consequently, it sought damages for the reduced value of its entire herd. Initially, the *Two Rivers* court discussed the four common types of loss: 1) personal injury to the user or physical injury to the user's property, other than the defective property itself; 2) economic loss of value resulting from a product rendered defective by poor workmanship or materials; 3) economic loss to the defective product itself; and, 4) physical harm to the user's other property as well as the defective product itself. These categories were discussed for informational purposes only; the *Two Rivers* court did not consider the object of injury or

**2.** For a further example of the application of § 402A liability to damages precipitously imposed on the defective product itself, see *Cloud v. Kit Manufacturing Co.*, 563 P.2d 248 (Alaska 1977).

type of loss to be dispositive. Instead, it was first led by the simple categorical distinction between sales and strict liability proposed in *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex.1977), i.e., that sales law governs the economic relationship between sellers and consumers of goods, whereas strict liability addresses the distinct nature of physical injuries. This distinction, according to *Two Rivers*, supra, determines the extent of responsibility carried by a manufacturer in marketing his product. For instance, he will be *strictly* liable only for those products that are "unreasonably dangerous" and thereby become unsafe for their intended use. Whether a product is "unreasonably dangerous" and, therefore, subjects the manufacturer to strict liability, depends on the expectations of the consumer. Insofar as most cattle breeds are afflicted with some type of genetic defects, the *Two Rivers* court concluded that the plaintiff was chargeable with expecting or accepting the risk of the bull semen containing defective spermatozoa; consequently, strict liability was an unavailable cause of action.

Still other jurisdictions care little whether the damages are imposed only upon the defective product itself, whether the damages accrued violently or gradually, or whether the particular damages were expected by the consumer. For example, strict liability for injuries or damages shall be borne by the manufacturer who places defective products in the mainstream of commerce; the cost of such injuries or damages shall not rest with the consumer who is powerless to protect himself, *Cova v. Harley Davidson Motor Co.*, 26 Mich.App. 602, 182 N.W.2d 800 (1970); *Santor v. A & M Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965); where there are unequal bargaining positions, tort principles are permitted to protect consumers, *Midland Forge, Inc. v. Letts Industries Inc.*, 395 F.Supp. 506 (N.D.Iowa, 1975); *Southwest Forest Industries Inc. v. Westinghouse Electric Corp.*, 422 F.2d 1013 (9th Cir.1970), certiorari denied 400 U.S. 902, 91 S.Ct. 138, 27 L.Ed.2d 138 (1970); the law of products liability was inculcated at the time of the promul-

gation of the Uniform Commercial Code, and with no Uniform Commercial Code provision usurping the role of negligence or intentional tort, strict liability applies without deference to commercial law, *Jig the Third Corp. v. Puritan Marine Ins. Underwriters Corp.*, 519 F.2d 171 (5th Cir.1975), rehearing denied 522 F.2d 1280 (5th Cir.1975); finally, where the damage is limited to the defective product alone, there is a proposal for the applicability of § 402A to be determined by the degree of loss to the consumer and not the manner in which harm occurred. Rubin, "Products Liability: Expanding the Property Damage Exception in Pure Economic Loss Cases," 54 Chicago-Kent L.Rev. 963 (1978).

Some jurisdictions cite policy grounds for determining the applicability of § 402A. In *Jones & Laughlin Steel Corp. v. Johns-Manville Sale Corp.*, 626 F.2d 280 (3d Cir.1980), the original purchaser of a smooth-surface asbestos roof sustained damage to its roof and water damage to steel products inside its mill, and experienced electrical outages. It was not essential that the defective design of the roof caused damage beyond the product itself or whether the damage was expected or abruptly inflicted; the consumer's ability to protect itself was the controlling interest. The plaintiff's injury was considered an economic loss because it was capable of protecting itself through bargaining for a warranty or foregoing warranties in lieu of a lower purchase price. Furthermore, the *Jones & Laughlin* court opined, the extension of strict liability to cover economic losses would effectively circumvent § 2–316 of the Uniform Commercial Code; it would preclude the manufacturer from limiting his liability through disclaimers or limited warranties. Finally, in recognition of *Clark v. International Harvester Co.*, 99 Idaho 326, 581 P.2d 784 (1978), the court reasoned that the judiciary must recognize legislative acts in commercial law and coordinate the development of tort law with deference to statutory sales law.

Obviously, as the foregoing discussion intimates, whether § 402A is applicable to injuries sustained by the defective

product alone is a mercurial, unsettling legal issue. I view the distinctions between damages sustained to other property and damages sustained to the defective product itself, along with distinctions between sudden, violent damage and gradually-developing damage, as perfunctory rules having little correlation to the definitions and policies of warranty and strict liability law. It is indeed incredulous that the application of § 402A depends on whether the frame defects here caused appellants to incur further physical damage to their persons, their other property or the persons or property of third parties. Moreover, it is equally devoid of reason, to employ § 402A here only where the cracks and fractures to the frames occurred suddenly and in calamitous fashion.

I prefer to peruse the language of the Uniform Commercial Code and § 402A of the Restatement of Torts (2d) to dispose of the issue. No provision of statutory commercial law supplants, to any extent, the application of products liability. Additionally, it would have demanded little effort of the authors of the Restatement to specifically restrict the kinds of property to which damage must be imposed before § 402A is actuated. Instead, reference is made only to "property" and I perceive no reason why such a term should exclude the defective product itself, regardless of how harm is inflicted.

Section 402A was drafted and adopted by this Commonwealth for the purpose of placing the risk of injury and expense upon the party most able to minimize loss. It matters not whether the injured party is a commercial or individual consumer or whether the injured person is in privity with the manufacturer. Similarly, it should not matter whether the damaged property is the defective product itself or other property contacting the defective product. Whether § 402A applies should depend solely on the statutory limitations of whether the defective product is unreasonably dangerous, whether the seller is engaged in the business of selling such a product, whether the product is expected to and does in fact reach the consumer without substantial change and whether the defect is the proximate

cause of injury. Its applicability should not depend on the traditional distinctions between tort and contract law or the categorical rules discussed above.

I believe that appellants' cause of action was properly filed under products liability law; therefore, I would hold that it was error to summarily dismiss their complaint due to its timely filing within the applicable six year limitations period.

Accordingly, I would reverse.