502 A.2d 1317

**Josephine JOHNSON, Appellant,**

v.

**GENERAL MOTORS CORPORATION.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1985.

Filed Jan. 3, 1986.

148

Laurence S. Berman, Philadelphia, for appellant.

Francis P. Burns, III, Philadelphia, for appellee.

Before SPAETH, President Judge, and HOFFMAN and HESTER, JJ.

HOFFMAN, Judge:

This is an appeal from the lower court's order sustaining appellee's preliminary objections in the nature of demurrers and dismissing appellant's complaint. Appellant contends that (1) she has standing to sue appellee for breach of warranty as either a buyer or a third party beneficiary under the Uniform Commercial Code (UCC), 13 Pa.C.S.A. §§ 1101–9507; (2) her warranty action is not barred by the requirement of horizontal privity;[1] (3) she has a cause of action in tort against appellee, manufacturer of an allegedly defective product, because she has sustained economic loss and been subjected to a serious risk of personal injury and property damage; and (4) the lower court erred in denying her leave to file an amended complaint that, appellant argues, alleges facts that properly state a cause of action in tort against appellee. For the following reasons, we affirm the order of the court below.

1. Appellant refers to the requirement as a "defense."

On May 22, 1981, appellant instituted this class action against appellee by filing a complaint [2] in assumpsit (breach of express and implied warranties) and in trespass (negligence). Appellant sought damages for allegedly defective automobile transmissions manufactured by appellee. On August 19, 1981, appellee filed preliminary objections to appellant's complaint alleging, *inter alia,* that appellant lacked standing to sue for breach of warranty and that she failed to state a cause of action for negligence. On January 27, 1984, before the lower court ruled on appellee's preliminary objections, appellant moved for leave to file an amended complaint that, *inter alia,* added a count in strict liability. The lower court denied appellant's motion on July 19, 1984, and, on December 13, 1984, sustained appellee's preliminary objections and dismissed appellant's complaint. This appeal followed.

A plaintiff must state in a concise and summary form the material facts on which a cause of action is based, Pa.R. Civ.P. 1019(a), and is not exempt from so pleading solely because he or she brings suit as a class action, *see id.* 1701(b) ("the procedure in a class action shall be in accordance with the rules governing the form of action in which relief is sought"). Accordingly, "[t]he defendant may file any applicable preliminary objections ... to the underlying merits of the class action claims...." *Id.* 1705 explanatory note–1977. Furthermore, "[t]he class action in Pennsylvania is a procedural device designed to promote efficiency and fairness in the handling of large numbers of similar claims; class status or the lack of it is irrelevant to the question whether an action is to be heard...." *Lilian v. Commonwealth,* 467 Pa. 15, 21, 354 A.2d 250, 253–54 (1976) (footnote omitted). With these principles in mind, we review appellee's demurrers in accordance with these well-established standards: "[w]e must accept as true all well-pleaded facts and the reasonable inferences therefrom. A demurrer can be sustained if it is certain that no recovery is

**2.** Pursuant to Pa.R.Civ.P. 1704, appellant included in her complaint a separate section entitled "class action allegations."

permitted. Any doubt must be resolved against sustaining the demurrer." *Douglas v. Schwenk,* 330 Pa.Superior Ct. 392, 394, 479 A.2d 608, 609 (1984) (citations omitted). Accepting as true appellant's well-pleaded facts and the reasonable inferences therefrom,[3] we find that, because appellant would not be entitled to any recovery, the demurrers were properly sustained.

Appellant first contends that she has standing to sue appellee as either a buyer under 13 Pa.C.S.A. § 2103(a) or as a third party beneficiary of an express or implied warranty under 13 Pa.C.S.A. § 2318. Appellant's husband purchased the automobile in question, a 1978 Buick Regal, on November 7, 1977. (Appellant's Complaint ¶ 3). Appellant alleges that "[he] departed this life on August 18, 1978, and the title of the vehicle in question passed to [appellant] by operation of law making [her] a proper party in these proceedings. [Appellant] now owns and continues to use the vehicle in question." (*Id.*).

■ Appellant is obviously not a buyer of the car as that word is defined in the UCC: "[a] person who buys or contracts to buy goods." 13 Pa.C.S.A. § 2103(a). Appellant's husband was that person. Appellant, however, points to the comments to § 2103(a) in arguing that she is a "legal successor in interest" which would qualify her as a buyer entitled to bring this warranty action:

The phrase "any legal successor in interest of such person" has been eliminated [in the definition of "buyer"] since § 2210 of this Article, which limits some types of *delegation of performance on assignment* of a sales contract, makes it clear that *not every such successor* can

---

**3.** The lower court found that "the amended complaint added nothing new factually or otherwise which would support [appellant's] cause of action" and "in many instances the proposed amended complaint recited identical facts and allegations." (Lower Court Opinion at 4). While we agree that appellant's amended complaint does not cure the pleading deficiencies of the original complaint, we will cite to the amended complaint where we believe it differs from the original.

be safely included in the definition. In every case, however, *such successors* are as of course included.

*Id.* comment 1 (emphasis added). Section 2210 of the UCC "recognizes both delegation of performance and assignability as normal and permissible incidents of a contract for the sale of goods." *Id.* § 2210 comment 1. Appellant, however, is not a delegatee; she is performing no "duty" owed by her husband to appellee. *Id.* § 2210(a). Nor is she an assignee; her husband did not assign to her any of the rights he may have had under his contract of purchase. *Id.* § 2210(b). Appellant cites no case, and we have found none, in which an heir was held to be a "successor in interest" under § 2103(a). Accordingly, we find this claim meritless.

Appellant alternatively argues that she is a third party beneficiary under § 2318 of the UCC, which provides as follows:

> The warranty of a seller whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods *and who is injured in person* by breach of the warranty. A seller may not exclude or limit the operation of this section.

*Id.* § 2318 (emphasis added). We disagree. Appellant alleges that she "sustained damages which are compensable at law for dimunition in value of [her automobile], for repairs to [the car's] transmission[ ], and [she has] been caused to motor in [a] vehicle[ ] unsafe for the highways." (Appellant's Complaint ¶ 11). Nowhere in appellant's complaint (or in her proposed amended complaint) does appellant allege that she suffered personal injury. Appellant, therefore, is not a third party beneficiary under § 2318.[4]

---

4. Query whether § 2318 may be inapplicable to the instant case on another basis. If appellant is a subsequent purchaser, *see infra* note 5, then arguably appellee's warranty cannot "extend[ ] to any natural person who is in the family or household of his buyer" because the buyer, appellant's husband, no longer owns the automobile in question.

█ Appellant contends, however, that § 2318 does not limit the extension of appellee's warranty to only those who have suffered personal injury. Comment 3 to § 2318 states that "the [first alternative of § 2-318 of the Uniform Commercial Code (the alternative adopted by our Legislature)] ... is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to *other persons* in the distributive chain." (Emphasis added). Assuming, *arguendo,* that appellant is a person to whom the buyer (her husband) resold the car,[5] the comment states nothing about extending § 2318 beyond personal injuries. We note that our Legislature did not adopt the so-called "third alternative" of § 2-318 of the Uniform Commercial Code:

> A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods *and who is injured* by breach of the warranty. A seller may not exclude or limit the operation of this section with respect to injury to the person of an individual to whom the warranty extends.

1A U.C.C. (U.L.A.) § 2-318 (Alternative C) at 53 (1976) (emphasis added). This alternative extends warranty protection the furthest. *See* 13 Pa.C.S.A. § 2318 comment 3 (third alternative "extend[s] the rule beyond injuries to the person"). While our Supreme Court has enlarged the *class* of beneficiaries to whom the seller's warranty extends, *see Salvador v. Atlantic Steel Boiler Co.,* 457 Pa. 24, 319 A.2d 903 (1974) (holding that a lack of horizontal privity itself may no longer bar an injured party's suit for breach of warranty), appellant cites no case in this Commonwealth which has extended the warranty to persons (other than, of

5. Neither party argues the point here, but appellant, as an heir of her husband, may be a subsequent purchaser. *See* 13 Pa.C.S.A. § 1201 (defining a purchaser as one who, *inter alia,* takes by a "voluntary transaction creating an interest in property"). *But see* Brief for Appellant at 13 ("[Appellant] was not a subsequent purchaser against whom a horizontal privity defense arguably could be raised since she acquired the automobile as an heir of the original owner." (Emphasis and footnote omitted)).

course, the buyer) who do not sustain personal injury.[6] Appellant's argument is better addressed to the Legislature and not to this Court.[7] *See, e.g., House v. Allegheny County,* 153 Pa.Superior Ct. 396, 402, 34 A.2d 48, 51 (1943) (this Court cannot write into a statute a provision obviously and intentionally omitted therefrom by the Legislature). In conclusion, we find that appellant has no standing to bring an action in assumpsit against appellee as either a buyer under 13 Pa.C.S.A. § 2103(a) or as a third party beneficiary under § 2318 and the case law enlarging it.

Appellant next contends that she has a cause of action in tort[8] against appellee for an allegedly defective product that caused her to sustain economic loss and to be subject to a serious risk of personal injury or property damage. The lower court, citing *Industrial Uniform Rental Co., Inc. v. International Harvester Co.,* 317 Pa.Superior Ct. 65, 463 A.2d 1085 (1983), for the proposition "that the law in Pennsylvania does not recognize a claim in tort for the recovery of economic loss alone," (Lower Court Opinion at

6. Appellant also cites the following language in *Salvador* for the proposition that our Supreme Court did not distinguish between personal injury and other types of damages: "We have decided that no current societal interest is served by permitting the manufacturer to place a defective article in the stream of commerce and then to avoid responsibility for *damages* caused by the defect." *Salvador v. Atlantic Steel Boiler Co., supra,* 457 Pa. at 32, 319 A.2d at 907 (emphasis added). We disagree. In *Salvador,* the injured party, an employee of the buyer of a steam boiler, lost about seventy-seven per cent of his hearing ability allegedly as a result of an explosion of the boiler. Neither *Salvador,* nor any other case in this Commonwealth, indicates that "damages" in this context refers to other than personal injuries.

7. The *Salvador* court noted the language in comment 3 (pertaining to the first alternative of § 2–318) to 12A P.S. § 2–318, now 13 Pa.C.S.A. § 2318, allowing for the developing case law to extend the seller's warranties to other persons. *Salvador v. Atlantic Steel Boiler Co., supra,* 457 Pa. at 27–29, 319 A.2d at 905–06. Thus the Court enlarged § 2–318 consistently with the § 2–318 alternative adopted by our Legislature. Salvador's employer purchased the boiler from a retail seller that evidently purchased it from the manufacturers. The manufacturers claimed that, because Salvador did not allege a contractual relationship with them, horizontal privity was lacking and therefore there could be no action in assumpsit.

8. In her brief appellant does not distinguish between negligence and strict liability theories.

5), found that appellant failed to state a cause of action because "[b]oth [her] original and amended complaints alleged purely economic loss." (*Id.* at 6). While we disagree with the court's reading of *Industrial Uniform,* we do agree that appellant has failed to state a cause of action in tort.

In *Industrial Uniform,*

[t]he question before this court [was] whether Pennsylvania courts should recognize a claim in strict liability [under § 402A of the Restatement (Second) of Torts (1965)] for recovery of economic losses, where the injury is only in the deterioration of the product itself, and is not the result of a defect causing some untoward occurrence thereby damaging the product.

*Industrial Uniform Rental Co., Inc. v. International Harvester Co., supra,* 317 Pa.Superior Ct. at 66–67, 463 A.2d at 1086 (footnotes omitted). We stated that "[t]he doctrine of products liability was developed primarily as a means by which consumers could be compensated for personal injury and property damage caused by defective products," *id.,* 317 Pa.Superior Ct. at 71, 463 A.2d at 1089, and that "[t]he warranty theory, however, now governed by the [UCC], provides for liability for losses on bargains and other injuries resulting from failure of the product to meet the expectations of the buyer where the seller has breached express or implied warranties to the buyer," *id.,* 317 Pa.Superior Ct. at 71, 463 A.2d at 1089. *See also Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1172–73 (3d Cir.1981) (distinguishing between the "safety-insurance policy" of tort law and the "expectation-bargain protection policy" of warranty law).

After reviewing the case law in this and other jurisdictions,

we formulate[d] the following rule: In an action between commercial enterprises, where defective design, manufacture and sale of a product is alleged, where there is nothing in the record to indicate that the defect is a condition potentially dangerous to persons or to property,

and where the purported defect results in progressive deterioration of the product itself, the buyer's cause of action for its economic losses against the seller is in breach of warranty under the UCC.

*Industrial Uniform Rental Co., Inc. v. International Harvester Co., supra,* 317 Pa.Superior Ct. at 65, 463 A.2d at 1093.[9] Although far from clear, this "is a mercurial, unsettling legal issue," *id.,* 317 Pa.Superior Ct. at 87, 463 A.2d at 1096 (HESTER, J., dissenting), *Industrial Uniform* suggests to us that tort liability[10] will be imposed upon a defendant for a defective product which is unreasonably ("potentially") dangerous (for example, by causing "some untoward occurrence"), thereby endangering people and property.[11] *Cf. Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co., supra* at 1173 ("the line between tort and contract must be drawn by analyzing interrelated factors

**9.** We do not believe that *Industrial Uniform* is limited to "action[s] between commercial enterprises." We believe there is no connection between the question presented here, whether an action can proceed in tort where only economic loss and "risk" are alleged, and whether the plaintiff is an individual or a commercial entity. *See Industrial Uniform Rental Co., Inc. v. International Harvester Co., supra,* 317 Pa.Superior Ct. at 87, 463 A.2d at 1097 (HESTER, J., dissenting) ("It matters not whether the injured party is a commercial or individual consumer"); *cf. Pennsylvania Glass Sand Corp. v. Caterpiller Tractor Co., supra* at 1175 (noting that Pennsylvania law would not differentiate between the cases that could be brought under the UCC and those under tort law based on the nature of the plaintiff).

**10.** Like other courts faced with the instant question, our discussion today applies to product liability cases brought both in negligence and in strict liability. *See, e.g., East River Steamship Corp. v. Delaval Turbine, Inc.,* 752 F.2d 903, 908 n. 2 (3d Cir.1985). This position is entirely reasonable in light of the fact that in both instances a plaintiff seeks recovery for harm caused by unsafe goods and not simply for harms caused by a product which fails to perform to expectations.

**11.** A product can be unreasonably dangerous *without* progressively deteriorating. In the latent defect cases, no such deterioration occurs, but the substances involved are undoubtedly hazardous: they are either known to cause, or are highly suspected of causing, physical harm. *See, e.g., Pearl v. Allied Corp.,* 566 F.Supp. 400 (E.D.Pa.1983) (urea formaldehyde, suspected of causing cancer); *School District v. ASARCO,* Nos. 1414–15 June Term 1982 (Ct. C.P. Phila. County Dec. 6, 1983) (asbestos); *Area Vocational Technical Board v. National Gypsum Co.,* No. 119 June Term 1982 (Ct. C.P. Lancaster County Sept. 7, 1983) (same).

such as the nature of the defect, the type of risk, and the manner in which the injury arose"). Therefore we must read appellant's complaint with a view to determining whether she states that the allegedly defective transmission is unreasonably dangerous (thus implicating tort law) or whether it is simply unfit for its intended use or failed to meet appellant's expectations (thus implicating warranty law).

Appellant alleges that "[s]hortly before February 11, 1981, the date of repair of [her] vehicle, [it] began to exhibit signs of a defective transmission." (Appellant's Complaint ¶ 6).

[S]aid transmission was defective in having:

a) Defective seal components;

b) Early and slipping shifts;

c) No dentent down shift;

d) Delayed or full throttel [sic] shifts causing transmission to improperly operate in the high pressure mode;

e) Defective clutch housings which have the snap ring groove formed too deep, reducing the strength of the housing in the snap ring retention area;

f) Higher than normal oil pressures within the transmission which force the snap ring out of the groove and deforms the housing;

g) Direct clutch plate failures (burned) due to cut or rolled seals;

h) Defective "no reverse" conditions;

i) Defective governors causing delayed or no 2–3 upshifts;

j) Worn or stripped governor "driven gear teeth";

k) Defective pumps and pump gears;

l) Clutch disengagement (slippage) and engine overrun during turn;

m) Low transmission fluid levels;

n) Defective wire mesh screen;

o) Transmission fluid leaks at the oil cooler line hoses due to loose and/or stripped hose clamps;

p) Low speed first gear growl;

q) Whistle type noise during 1–2 upshift at medium to heavy throttle application;

r) Defective converter units; and

s) Such other and different defects, the full extent of which will be determined by discovery.

(*Id.* ¶ 10). In her amended complaint, appellant adds that "extensive repairs became necessary to remedy the *premature wearing* of [her] automobile's transmission and other parts of [her] automobile which were damaged by the defective transmission." (Appellant's Amended Complaint ¶ 8 (emphasis added)). . As for the damages caused by these defects in the transmission, besides those for repairs to the transmission and her car (the latter unspecified), appellant alleges that she "[has] been caused to motor in [a] vehicle[ ] unsafe for the highways." (Appellant's Complaint ¶ 11). This safety "hazard" is explained in greater detail in her amended complaint:

[Appellant] ... [has] been subjected to unreasonably dangerous and hazardous conditions and a high *risk* of danger. There is a high *risk* that transmission failure will cause [appellant] ... to suffer physical harm as a result of:

(a) Failure of the transmission to shift;

(b) Failure of transmission during hill climb causing vehicle to suddenly descend hill;

(c) Sudden loss of power while operating the vehicle on the highway;

(d) Loss of vehicle control;

(e) Engine seizure;

(f) Transmission failure;

(g) Fire; and

(h) Propulsion of engine parts into the passenger compartment or onto the highway, etc.

(Appellant's Amended Complaint ¶ 19 (emphasis added)). And, finally, she alleges that she "[has] suffered or will be

unreasonably subjected to a high *risk* of suffering property damage." (*Id.* ¶ 20 (emphasis added)).

Notwithstanding the detailed allegations in her complaints, we do not believe that appellant has stated a cause of action in tort under the *Industrial Uniform* standard. Appellant has failed to assert that the alleged defects in her automobile's transmission made it unreasonably dangerous to the detriment of persons or property. The transmission prematurely wore out; appellant pleads no unexpected occurrence that harmed anyone or anything, including the automobile itself. Even without such an occurrence, we do not believe that the progressive deterioration of the transmission made it an unreasonably dangerous product. Again, no one was hurt; no property was damaged. Appellant pleads a variety of "risks" that she faced, yet there is no allegation of even a *near* occurrence of an accident which *almost* harmed someone or something. Furthermore, we fail to see how appellant is subjected to *any* risk given the fact that her transmission has been repaired. (Appellant's Complaint ¶ 7). We conclude that appellant simply may have received a transmission which failed to perform as expected or was of an unexpected quality.

This case is similar to *Industrial Uniform, supra,* where trucks purchased by the plaintiffs developed cracks and failures in the frames and were repaired; we held that the complaint failed to state a cause of action in tort. Those cases where an unexpected occurrence did occur, thus creating a real, not a risk of, danger to persons or to property, are distinguishable. In *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co., supra,* a front-end loader had an allegedly hazardous defect (a faulty design in that the machine was not equipped with a fire suppression system or with adequate warnings on the steps to be taken if a fire did occur) that caused a sudden and highly dangerous occurrence, a fire which damaged the loader and thus endangered people and property. *See also E.J. Stewart, Inc. v. Aitken Products, Inc.,* No. 81–3792 (E.D.Pa. Oct. 19, 1982) (heating element manufactured by the defendant and

incorporated into a heater caused a fire at the plaintiff's building).[12]

Also factually similar to the instant case is *East River Steamship Corp. v. Delaval Turbine, Inc.*, 752 F.2d 903 (3d Cir.) *cert. granted,* —— U.S. ——, 106 S.Ct. 56, 88 L.Ed.2d 45 (1985) (applying the federal common law of admiralty and using the *Pennsylvania Glass Sand Corp.* test), where allegedly defective turbines were installed on supertankers. The court found that, "[b]ecause the defect involved gradual deterioration of the turbine's inner mechanisms, the defect did not pose a sudden or calamitous injury to persons or property." *Id.* at 909. Of particular note is the court's response to the plaintiffs' claim that the defective turbine placed one of the tankers and its crew in peril during a storm:

> In an unsworn letter, the STUYVESANT'S [the supertanker's] master noted that because of the turbine's malfunction, the STUYVESANT could not reach top speed, and thus had difficulty making headway into a storm off

**12.** Both *E.J. Stewart, Inc., supra,* and another case cited by appellant, *SEPTA v. General Motors Corp.*, No. 83–278 (E.D.Pa. June 14, 1983), applied the *Pennsylvania Glass Sand Corp.* test in determining whether a claim was stated in assumpsit or in tort. *Pennsylvania Glass Sand Corp.* was a diversity action, and the court did not have the benefit of our decision in *Industrial Uniform.* The *SEPTA* case arguably supports appellant's claim in the instant case. In that case, the court held that the plaintiff stated a cause of action under § 402A of the Restatement (Second) of Torts (1965), where SEPTA asserted that the alleged defect, the placement of air conditioning systems within the engine compartments of SEPTA buses, caused physical harm to other parts and components of the buses and "posed a danger to the health and safety of the riding public and the driver of the bus." *SEPTA v. General Motors Corp., supra* slip op. at 2–4. The court, acknowledging that the question was a "close" one, noted that "[t]he underlying dispute between the parties appears to be simply that SEPTA did not receive the quality of the product it expected," but nonetheless inferred that the product might be unsafe. *Id.* slip op. at 4. While here appellant does allege in her complaint that "other parts of [her] automobile ... were damaged by the defective transmission," (Appellant's Amended Complaint ¶ 8), we decline to make such an inference. Reviewing both how the defects manifested themselves in the instant case and the nature of the harms caused by such defects, we cannot *reasonably* infer that the allegedly defective transmission was unsafe. In any event, we are bound by *Industrial Uniform.*

the Gulf of Alaska. (App. at 206). The difficulty caused the master to fear that the ship would drift hazardously close to the lee shore of the Gulf. The ship, however, did successfully travel against the storm, and in fact proceeded to Panama, a voyage of some seven weeks. Indeed, after unloading its cargo at Panama, the ship proceeded to San Francisco, where the turbine was examined for problems. As the district court stated, "any nascent allegations of acute peril to the ship or crew resulting from the turbine defect are belied by the course of action undertaken after the defect manifested itself." (App. at 264).

*Id.* at 909–10 n.3. The court stated: "Even assuming that such allegations of imminent danger are credible, *we nonetheless find that because no persons or property were injured or damaged, no tort recovery is appropriate in this case given the qualitative nature of the defect and the gradual manner in which the defect manifested itself." Id.* at 909–10 (emphasis added) (footnote three, reproduced *supra,* omitted). Thus the court appears to be suggesting that, if there had been personal injury or property damage, such damages may have supported an inference that, even though the deterioration was progressive, the turbines were unreasonably dangerous. Here, the allegations of "risk" are even less concrete than those asserted in *East River Steamship Corp.* We are inclined, in fact, to classify appellant's allegations of risk as wholly speculative. We believe that the alleged defects in appellant's automobile transmission involved no more than "internal deterioration and breakdown" of the transmission's parts, thus "directly implicat[ing] the intended performance level" of the transmission and appellant's "disappointed expectations" in it. *See id.* at 909.

It follows that appellant's final contention is meritless. Because there is no "reasonable possibility that a cause of action may be stated," *Dietrich Industries, Inc. v. Abrams,* 309 Pa.Superior Ct. 202, 213, 455 A.2d 119, 125 (1982), we find that the lower court properly denied appellant's motion

for leave to file an amended complaint. No further pleading will transform appellant's warranty claim into a tort one.

Having found that the lower court properly sustained appellee's preliminary objections, we affirm the court's order.

Order affirmed.