## New York State Electric & Gas Corp. v.
## Westinghouse Electric Corp.

*Carl A. Eck,* for plaintiff.
*Kevin P. Lucas,* for defendant.
*Arthur J. Leonard,* for defendant.

STRASSBURGER, *J.*, December 16, 1987—On October 16, 1987, this court granted a motion for summary judgment filed on behalf of defendant, Westinghouse Electric Corporation. Plaintiff New York State Electric & Gas Corporation having appealed, this opinion is written to comply with Pa. R.A.P. 1925(a).

For the purposes of ruling on the motion for summary judgment, the following facts are deemed established:

In 1969 Westinghouse supplied NYSEG with a turbine generator. Thereafter in 1984, Westinghouse represented to NYSEG that the seal should be replaced. NYSEG permitted Westinghouse to replace the seal; however, NYSEG found the replacement seal to be defective which resulted in the loss of use of the generator for approximately three months.

Procedurally, the history of this case is as follows. May 30, 1986, NYSEG filed its original complaint against Westinghouse. Subsequently, on July 25, 1986, preliminary objections were filed. In response, NYSEG filed an amended complaint containing the following counts: count I — general negligence; count II — willful, wanton negligence; count III — negligent and/or intentional misrepresentation; count IV — negligence-repair or inspection; count V — negligent performing of undertaking to render services; count VI — negligent sale, design and manufacture of replacement seal; count VII — interference with contractual relationship; count VIII — breach of contract; count IX — breach of warranty; and count X — strict liability. Preliminary objections to the amended complaint were filed by Westinghouse and on October 27, 1986, Judge Farino sustained the preliminary objections as to count VII and dismissed the remaining pre-

liminary objections without prejudice to Westinghouse to raise them again on a motion for summary judgment. Thereafter, on December 9, 1986, Westinghouse filed an answer, new matter and counterclaim. A reply to the new matter and answer was filed by NYSEG on January 20, 1987, but was subsequently amended on May 18, 1987. Also filed on May 18, 1987 was Westinghouse's motion for judgment on the pleadings or, in the alternative; motion for summary judgment.

At argument and in its brief, NYSEG raised an objection to Westinghouse's motion contending that it was premature as the pleadings were not closed; discovery had been thwarted; and the record had not changed since Westinghouse's preliminary objections were decided.

With regard to the pleadings, NYSEG contended that since an answer, new matter and counterclaim were filed on August 20, 1987 by Shields, the pleadings were not closed and therefore the motion was premature as the 20-day period for the filing of responses had not expired before the argument date. Despite NYSEG's assertions, the fact remains that the pleadings between NYSEG and Westinghouse were closed on the argument date. If NYSEG's interpretation of the rules were accepted, a defendant could never get summary judgment if a plaintiff simply joined a straw party. Surely a logical reading of the rules would permit the court to entertain a motion for summary judgment where the pleadings are closed between the parties involved in the motion.

Secondly, NYSEG contended that the motion was premature in that discovery had yet to be completed. In particular, NYSEG contended that interrogatories had not been answered and that documents had not been produced as ordered. While

this may have been true, the answers or documents would not have affected the instant proceeding. The information sought was not relevant to issues upon which the court was making its ruling.

Lastly, NYSEG contended that since the state of the record had not changed since Judge Farino disposed of Westinghouse's preliminary objections on October 27, 1986, Westinghouse was judge shopping. This court disagrees. Judge Farino's order, signed over one year ago, specifically stated that "the remaining preliminary objections are dismissed without prejudice to the same issues being raised by summary judgment." If indeed the basis for the ruling was to provide NYSEG with a chance to engage in discovery, it had ample opportunity to do so.

Having disposed of NYSEG's objections, we shall move on to the reasons this court granted Westinghouse's motion for summary judgment. First, there are written contracts entered by the parties which specifically limited NYSEG's remedies and Westinghouse's liability. From the exhibits and attachments, it is clear that all work or services provided by Westinghouse to NYSEG were pursuant to "Pennsylvania Electric Company, General Provisions, Fixed Price Supply Contract, Revised April 27, 1979" and the "Westinghouse exceptions to Penelec Fixed Price Contract dated April 27, 1979 (Including Engineers' Technical Field Assistance)." In relevant part the latter agreement states:

"Remedies are Exclusive.

"The remedies of purchaser set forth for the above warranties are exclusive.

"Repair, adjustment, reperformance, modification or replacement of any equipment or services supplied hereunder in the manner and during the period provided herein shall constitute fulfillment of

all liabilities of Westinghouse to purchaser under the warranties set forth in this article, whether based on contract; on negligence of any kind, strict liability or tort, on the part of Westinghouse or of its suppliers or subcontractors of any tier; or otherwise." (Article VIII(f)).

. . .

"Limitation of Liability.

"Purchaser expressly agrees that, notwithstanding any other provision of this contract, under no circumstances shall Westinghouse's total aggregate liability resulting:

"(a) From the performance, failure to perform or breach of Westinghouse's obligation herein; and

"(b) From any activity undertaken by Westinghouse with respect to the equipment and services covered by this contract; and

"(c) From all actions based on negligence of any kind, strict liability or tort, on the part of Westinghouse or its suppliers or subcontractors of any tier; and

"(d) Otherwise

"Exceed the price of the product or part on which such liability is based.

"Purchaser expressly agrees that the remedies provided herein relating to warranties and patent infringement are exclusive and that neither Westinghouse nor its suppliers or subcontractors of any tier will under any circumstances be liable under any theory or [sic] recovery, whether based on contract, on negligence of any kind, strict liability or tort, on the part of Westinghouse or its suppliers or subcontractors of any tier; or otherwise, for damage to or loss of property or equipment other than the equipment supplied hereunder; for loss of profits or revenue; for loss of use of power system; for increased cost of any kind, including but not limited to capital

cost, fuel cost and cost of purchased or replacement power; claims of customers or purchaser, including but not limited to claims for service interruptions; or for any indirect, special, incidental or consequential damages." (Article XXII).

Under Pennsylvania law, it is well established that contractual provisions eliminating liability for special, indirect or consequential damages are valid and enforceable. *National Cash Register Company v. Modern Transfer Co.*, 224 Pa. Super. 138, 302 A.2d 486 (1973); *Eimco Corp. v. Lombardi*, 193 Pa. Super. 1, 162 A.2d 263 (1960); *Magar v. Lifetime Inc.*, 187 Pa. Super. 143, 144 A.2d 747 (1958). Further, under 13 Pa. C.S. §2719, the Uniform Commercial Code expressly permits the parties to fashion their own remedies and liability as follows:

"§2719. Contractual modification or limitation of remedy —

"(a) *General rule* — Subject to the provisions of subsections (b) and (c) and of section 2718 (relating to liquidation or limitation of damages; deposits):

"(1) The agreement may provide for remedies in addition to or in substitution for those provided in this division and may limit or alter the measure of damages recoverable under this division, as by limiting the remedies of the buyer to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts.

. . .

"(c) *Limitation of consequential damages* — Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."

The parties in this case have fashioned their own remedies and it is clear that Westinghouse is not liable for any incidental or consequential damage whether in contract, tort or strict liability. Thus, based on the contract, all damages alleged in NYSEG's amended complaint are precluded.

Although it is the opinion of this court that the contract provisions preclude all counts of the amended complaint, with regard to counts I through VI and count X, there is a second basis for this court's grant of summary judgment. Under Pennsylvania law, there is no cause of action in tort for recovery of purely economic loss. This is exactly what NYSEG seeks in paragraph 40 of the amended complaint, and which is incorporated in all the tort counts.

Paragraph 40 states:

"(40) As the result of the negligence of the defendant, Westinghouse, the plaintiff, NYSEG, has suffered damages in the following manners:

"(a) Loss of use of the operation of generator no. 1, resulting in loss of profits from the sale, supply and distribution of electricity to its customers, and to other power companies with whom NYSEG had existing contract opportunities. This item of damage is approximately $7,355,559;

"(b) The cost of purchase of replacement energy for NYSEG consumers in the amount of approximatey $1,009,617; and

"(c) The cost of disassembly, removal, shipment, repair, and reinstallation, and other incidental expenses in the amount of approximately $212,000."

There was no personal injury or damage to other property alleged. The losses are purely economic. Under such circumstances the majority of jurisdictions, including Pennsylvania, do not recognize a cause of action. See *Aloe Coal Co. v. Clark Equip-*

*ment Co.,* 816 F.2d 110 (3d Cir. 1987); *Johnson v. General Motors Corp.,* 349 Pa. Super. 147, 502 A.2d 1317 (1986); *Industrial Uniform Rental Co. v. International Harvester Co.,* 317 Pa. Super. 65, 463 A.2d 1085 (1983).

To explain, it is necessary to review the case law. In *Industrial Uniform, supra,* a commercial buyer of trucks brought suit in trespass against the manufacturer alleging negligent design, manufacture and sale of the trucks, and sought damages for cost of repairs. In affirming the trial court's grant of the manufacturer's motion for summary judgment, the court announced the following rule:

"In an action between commercial enterprises, where defective design, manufacture and sale of a product is alleged, where there is nothing in the record to indicate that the defect is a condition potentially dangerous to persons or to property, and where the purported defect results in progressive deterioration of the product itself, the buyer's cause of action for its economic losses against the seller is in breach of warranty under the UCC." 317 Pa. Super. at 79-80; 463 A.2d at 1093.

In *Johnson, supra,* the owner of an automobile brought a class action against the manufacturer in assumpsit seeking damages for allegedly defective automobile transmissions. The trial court sustained the manufacturer's preliminary objections and dismissed the complaint. In affirming the trial court, the Superior Court held that the owner did not state a cause of action under *Industrial Uniform, supra.* As explained by the court:

"Appellant has failed to assert that the alleged defects in her automobile's transmission made it unreasonably dangerous to the detriment of persons or property. The transmission prematurely wore out; appellant pleads no unexpected occurrence that

harmed anyone or anything, including the automobile itself. Even without such an occurrence, we do not believe that the progressive deterioration of the transmission made it an unreasonably dangerous product. Again, no one was hurt; no property was damaged. Appellant pleads a variety of 'risks' that she faced, yet there is no allegation of even a *near* occurrence of an accident which *almost* harmed someone or something. Furthermore, we fail to see how appellant is subjected to *any* risk given the fact that her transmission has been repaired. We conclude that appellant simply may have received a transmission which failed to perform as expected or was of an unexpected quality." 349 Pa. Super. at 159, 502 A.2d at 1323.

In both *Industrial Uniform, supra,* and *Johnson, supra,* the Superior Court relied upon *Pennsylvania Glass Sand Corporation v. Caterpillar Tractor Co.,* 652 F.2d 1165 (3d Cir. 1981) which concluded that, under Pennsylvania law, the determination of whether tort remedies were appropriate under present circumstances would turn on the nature of the defect, the type of risk, and the manner in which the injury arose. However, there were two significant decisions rendered after *Industrial Uniform, supra, and Johnson, supra,* which re-evaluated this conclusion and held that regardless of preceding considerations, tort principles have no applicability when there is no personal injury or damage to other property and the loss is purely economic. *East River Steamship Corp. v. Transamerica Delaval Inc.,* 106 S. Ct. 2295 (1986); *Aloe Coal Company v. Clark Equipment Company, supra.*

*East River, supra,* was an admiralty case brought by charterers of supertankers against a turbine manufacturer. Plaintiff alleged design and manu-

facturing defects and filed a five-count complaint alleging tortious conduct based on a product liability theory and seeking damages for the cost of repairing the ships and for income lost while they were out of service. The district court granted summary judgment, the Court of Appeals affirmed and the charterers sought review. In affirming the lower courts, the Supreme Court rejected the *Pennsylvania Glass Sand Corp.* analysis and held that "whether stated in negligence or strict liability, no products-liability claim lies in admiralty when the only injury claimed is economic loss." 106 S. Ct. at 2305.

After *East River, supra,* the Third Circuit had a chance to reevaluate *Pennsylvania Glass Sand Corp., supra.* The *Aloe* court concluded that no longer would the analysis turn on the nature of the defect or type of risk, but that following *East River, supra,* tort remedies would never be appropriate when there is no personal injury or damage to property other than the product itself and the loss is purely economic.

At page 117 the *Aloe* court cited *East River, supra,* as follows:

"The intermediate positions, which essentially turn on the degree of risk, are too indeterminate to enable manufacturers easily to structure their business behavior. Nor do we find persuasive a distinction that rests on the manner in which the product is injured. We realize that the damage may be qualitative, occurring through gradual deterioration or internal breakage. Or it may be calamitous . . . But either way, since by definition no person or other property is damaged, the resulting loss is purely economic. Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the pur-

chaser to receive the benefit of its bargain — traditionally the core concern of contract law. 106 S.Ct. at 2302." 816 F.2d at 117-8.

Further, the *Aloe* court noted the five considerations made by the court in *East River, supra,* as follows:

"(1) When the defective product injures only itself the reasons for imposing a tort duty are weak and those limiting remedies to contract law are strong; (2) damage to the product itself is most naturally understood as a warranty claim; (3) contract law is well suited to commercial controversies because the parties may set the terms of their own agreements; (4) warranty law sufficiently protects purchasers by allowing them to obtain the benefit of their bargain; and (5) warranty law has a built-in limitation on liability, whereas tort actions could subject manufacturers to an indefinite amount of damages. 106 S.Ct. at 2303." 816 F.2d at 117.

While this court is not bound by opinions of the Third Circuit or even the U. S. Supreme Court in this situation, they are entitled to the utmost respect as prognostications of how the appellate courts of the commonwealth would rule. In addition, their reasoning is persuasive.

In sum, after reviewing *Industrial Uniform, supra, Johnson, supra, East River, supra,* and *Aloe, supra,* in connection with the facts of this case, this court concludes that Westinghouse is entitled to judgment as a matter of law because on the undisputed facts, there is no cause of action in tort.

While Westinghouse has raised several other defenses such as the 12-year Statute of Repose, timeliness of NYSEG's amended complaint; releases; performance of warranty obligations; and parol evidence, these either raised factual issues or had no merit.

As a last point, on October 26, 1987, NYSEG filed a motion for reconsideration and reargument of the grant of summary judgment. On October 27, 1987, the court denied NYSEG's motion, finding that the additional deposition of Kessinger and various documents identified and testified to at the deposition did not affect this court's original determination. The deposition merely amplified arguments that were made by counsel for NYSEG on September 2, 1987.

Thus, for all the preceding reasons, the motion for summary judgment was appropriately granted.