# Shimek v. General Motors Corp.

*Mark Neff,* for plaintiff.
*George N. Stewart,* for defendant.

CICCHETTI, *P.J.,* January 27, 1988—Presently before the court are the preliminary objections brought by defendant, General Motors Corporation. For the following reasons the preliminary objections are sustained.

. The facts of this case are not in dispute. On September 11, 1985, plaintiff, John Shimek, purchased a new 1986 Somerset automobile from defendant. Approximately one year later on September 30, 1986 the aforesaid automobile allegedly malfunctioned and without warning a fire resulted in the engine compartment causing damage in the amount of $6,099.12. Plaintiff's complaint prays for damages in this amount.

Count I of the complaint allegations is based in negligence. Count II is premised on principles of strict liability. Count III is based on assumpsit/breach of expressed and implied warranty precepts. Defendant asks in his preliminary ob-

jections that the court strike count I and count II from plaintiff's complaint. While we sustain defendant's preliminary objections, we note that this matter is not easily decided. Although case law has addressed the question of whether tort and/or contract principles apply when a product injures only itself, these have been decided without the benefit of a Pennsylvania Supreme Court decision. We therefore feel it necessary to provide a background perspective on relevant case law.

In the case *Pennsylvania Glass Sand v. Caterpillar Tractor Co.*, 652 F.2d 1165 (3d Cir. 1981) (hereinafter PGS), the Third Circuit court was asked to decide if the damages sought as a result of a fire in a front-end loader were recoverable in tort or limited to contract principles for breach of warranty. The lower court held that such loss was purely economic, thus permitting recovery under only the latter. PGS appealed maintaining that it sustained "physical injury to its property occasioned by a catastrophic event." *Id.* at 1167. Injury of this nature, PGS argued, would clearly permit recovery in tort.

As no court in Pennsylvania had specifically addressed the matter of recovery for injury confined to the product itself, the court stated:

"In the absence of an authoritative pronouncement from the state's highest court, the task of federal tribunal is to predict how the court would rule. To make this prognostication, we are not inflexibly confined by dicta or by lower state court decisions, although we should look to such statements as indicia of how the state's highest court might decide." *Id.* at 1167.

The court continued by examining case law in an effort to determine applicable principles of tort and

contract law. The court noted both a majority[1] and a minority[2] rule as to whether injury to a product itself was compensable in tort. Ultimately, the Third Circuit advanced an intermediate approach which depends on the nature of the defect and the type of risk which it poses. Such an approach would depend on whether the defect constituted a safety hazard. *Id.* at 1174. The court concluded that:

"[I]t would appear that Pennsylvania law would not treat the damage in this case as economic loss recoverable solely in a warranty action. Rather, we believe that Pennsylvania courts would regard the injury stemming from the allegedly hazardous defect in the loader as the sort of physical injury to property compensable under tort law. *Id.* at 1175.

Subsequent Pennsylvania cases relied on the reasoning of *Pennsylvania Glass Sand.* In *Industrial Uniform Rental v. International Harvester Co.,* 317 Pa. Super. 65, 463 A.2d 1085 (1983), the court was faced with a situation where trucks purchased from the defendant allegedly developed cracks and failures in the frames. A cause of action sounding in tort was initiated as plaintiff sought damages for repairs to the trucks. Because plaintiff also prayed for damages for a "diminution in use expectance," 317 Pa. Super. at 68, 463 A.2d at 1087, recovery was sought in tort law. After a lengthy discussion of case law, the court formulated the following rule:

"In an action between commercial enterprises, where defective design, manufacture and sale of a

---

1. In *Seely v. White Motor Co.,* 63 Cal. 2d 9, 45 Cal. Rptr. 17, 403 P.2d 145 (1965), the court held that injuries classified as "economic loss" should not be recoverable in tort.

2. On the contrary, in *Santor v. A & M Karagheusian Inc.,* 44 N.J. 52, 207 A.2d 305 (1965), the court permitted recovery in tort for economic loss due to qualitative defects.

product is alleged, where there is nothing in the record to indicate that the defect is a condition potentially dangerous to person or to property, and where the purported defect results in progressive deterioration of the product itself, the buyer's causes of action for its economic loses against the seller is in breach of warranty under the UCC." *Id.* at 79-80, 463 A.2d at 1093.

This same issue was again addressed in *Johnson v. General Motors Corp.,* 349 Pa. Super. 147, 502 A.2d 1317 (1986), a class action brought in warranty and trespass for allegedly defective automobile transmissions. The court emphasized that it must review the complaint to determine "whether [the appellant] states that the allegedly defective transmission is unreasonably dangerous (thus implicating tort law) or whether it is simply unfit for its intended use or failed to meet appellant's expectations (thus implicating warranty law)." *Id.* at 157, 502 A.2d at 1322.

The court did not find the unreasonably dangerous condition for recovery under tort law to exist. Only when an unexpected occurrence *did* occur which created a real, not merely a risk of, danger to people or property would a cause of action lie in tort. *Id.,* at 159, 502 A.2d at 1323.

The U. S. Supreme Court subsequently ruled on this issue sitting in admiralty in the case of *East River Steamship Corp. v. Transamerica Delaval Inc.,* 476 U.S.____, 106 S. Ct. 2295, 90 L.Ed.2d 865 (1986). In that case, the court was asked to determine whether the manufacturer of a turbine used on oil-transporting supertankers could be held liable under theories of negligence and strict liability in tort for repair costs and loss of income allegedly resulting from damage caused when the turbines

malfunctioned. The only damage was to the product itself and the injury claimed was economic loss.

The court carefully and extensively analyzed relevant case law. The Third Circuit intermediate approach and the minority view, both of which are discussed elsewhere in this opinion, were deemed "unsatisfactory." 106 S. Ct. at 2302. Accordingly, the court held:

"The intermediate positions, which essentially turn on the degree of risk, are too indeterminate to enable manufacturers easily to structure their business behavior. Nor do we find persuasive a distinction that rests on the manner in which the product is injured. We realize that the damage may be qualitative, occurring through gradual deterioration or internal breakage. Or it may be calamitous. (citations omitted). But either way, since by definition no person or other property is damaged, the resulting loss is purely economic. Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain — traditionally the core concern of contract law. (citations omitted)

"[W]e adopt an approach similar to *Seely* and hold that a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." 106 S. Ct. at 2302.

"Damage to a product itself is most naturally understood as a warranty claim." *Id*. at 2303. "A warranty action . . . has a built-in limitation on liability, whereas a tort action could subject the manufacturer to damages of a indefinite amount." *Id*. at 2303-2304.

Subsequent to the *East River* case, the Third Circuit was again asked to rule on this issue in *Aloe Coal Company v. Clark Equipment Company,* 816 F.2d 110 (3d Cir. 1987). The purchaser of a tractor shovel which was destroyed by a fire of unknown origin brought an action under theories of breach of warranty, negligence and strict liability in tort. The issue addressed by the *Aloe* court was whether there was sufficient evidence of causation to submit the negligence claim to the jury.

The court referred back to its decision in *Pennsylvania Glass Sand* where it held that a fire of unknown origin, which was in fact a sudden and dangerous occurrence, would permit a cause of action to lie in tort. Moreover, the court noted the *Industrial* decision which "embraced the rationale of *Pennsylvania Glass Sand*" *Aloe, supra,* at 118, and the more recent decision in *Johnson* which followed the reasoning of *Industrial.*

However, at the time of the *Aloe* case the Third Circuit also had the wisdom of the Supreme Court decision in *East River.* Since no Pennsylvania Supreme Court decision had yet to address this issue, the Third Circuit once again reiterated its predictive role in deciding the matter presently before it.

The *Aloe* court emphasized the five considerations of the U.S. Supreme Court in reaching its decision in *East River:*

(1) If a defective product injures only itself it is a much stronger argument seeking remedies in contract law rather than imposing a tort duty;

(2) if there is damage to only the product this is most naturally understood as a warranty claim;

(3) contract law is well-suited to commercial controversies, allowing the parties to set the terms of their agreements;

(4) by applying warranty law purchasers are able to obtain the benefit of their bargain; and

(5) there is a built-in limitation on liability under warranty law. *Aloe* at 117.

While the Third Circuit noted the pronouncements of the Superior Court of Pennsylvania in both *Industrial* and *Johnson,* it emphasized that neither decision had the benefit of *East River* which flatly rejected the rationale of *Pennsylvania Glass Sand.* As such, the Third Circuit believed that the Pennsylvania Supreme Court would not accept *Industrial* or *Johnson.* Accordingly, the Third Circuit stated that "[w]e believe that Pennsylvania courts will reaffirm their lack of hospitality to tort liability for purely economic loss." *Aloe* at 119.

In the case sub judice this court is asked to determine an area of law which has yet to be decided by the Pennsylvania Supreme Court. We have reviewed the case law and agree with the well-reasoned opinion of the *Aloe* court.

Defendant has filed preliminary objections in the nature of a demurrer asking this court to strike count I (negligence) and count II (strictly liability) of plaintiff's complaint. "A demurrer can only be sustained where the complaint is clearly insufficient to establish the pleader's right to relief." *County of Allegheny v. Commonwealth,* 507 Pa. 360, 372, 490 A.2d 402, 408 (1985). Furthermore:

"Since the sustaining of a demurrer results in a denial of the pleader's claim or a dismissal of his suit, a preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim of which relief may be granted." *Id.*

Plaintiff argues that he is entitled to relief under both contract and tort law precepts. In accordance with the *Aloe* decision, however, this court will not

impose a tort duty on the defendant, GM. As such we strike count I and count II from plaintiff's complaint thereby enabling Mr. Shimek to proceed in his action against GM under assumpsit/breach of expressed and implied warranty theories.

Hence in accordance with the foregoing we enter the following

## ORDER

And now, January 27, 1988, the preliminary objections by the defendant, General Motors Corporation, are hereby sustained.